CHARLES R. JONES, Chief Judge.
hThe Appellant, Officer Patrick O’Hern, seeks review of the judgment of the Civil Service Commission of the City of New Orleans affirming his termination from his position as an officer for the New Orleans Police Department, the Appellee. Finding that the Civil Service Commission did not err, we affirm the judgment of the Civil Service Commission.
The facts are undisputed. Officer O’Hern was a classified Police Officer II on duty on December 12, 2009 with the New Orleans Police Department (“NOPD”). During his tour of duty, Officer O’Hern left his patrol assignment and went to his private vehicle. He drove his vehicle to the top floor of a parking garage where he consumed a substantial portion of a fifth of whiskey, and ingested ten to twelve prescription Clonazepam[1] tablets. Officer O’Hern then discharged his police assigned firearm more than twenty times, shooting through his vehicle’s roof and windshield.
Reports of the incident were made to the NOPD and units rushed to the scene *1038 of the incident. Initially, the NOPD believed that Officer O’Hern had been |2engaged in a gun battle with unknown perpetrators. However, at the scene, the responding officers found Officer O’Hern incapacitated, and unable to control his bodily actions. He was evacuated to a medical facility where he subsequently informed medical personnel that he attempted to commit suicide. His medical records revealed that his blood alcohol level at the medical facility was 0.105%[2].
On December 12, 2009, the day of the incident, the NOPD issued a Form DI-1: “Initiation of a Formal Disciplinary Investigation,” which was signed by Sergeant Lawrence Jones (“Sgt. Jones”), who was assigned to the Public Integrity Bureau of the NOPD. The complaint placed Officer O’Hern on notice that his actions on that day gave rise to a possible violation of “Rule 2: Moral Conduct; Paragraph 1: Adherence to Law, to wit, R.S. 14:94 Relative to the illegal use of weapons or dangerous instrumentalities.” Pursuant to this notice, NOPD began a criminal investigation of Officer O’Hern’s actions on that day. Based on the results of the investigation, Officer O’Hern was arrested for a violation of La. R.S. 14:94, and placed on emergency suspension by the NOPD. Thereafter, on January 26, 2010, Sgt. Jones turned his criminal investigation over to the Orleans Parish District Attorney’s Office (D.A.) for a determination of whether criminal charges would be filed. Officer O’Hern subsequently pled guilty to two counts of “Criminal Mischief’ in the Orleans Parish Criminal District Court.
On March 5, 2010, pursuant to the administrative investigation, the NOPD issued a notice to Officer O’Hern, compelling an administrative statement, a statement which signifies the beginning of the NOPD’s administrative investigation. Officer O’Hern subsequently gave his statement on March 11, 2010, with his counsel present. On April 27, 2010, Sgt. Jones provided Officer O’Hern a | ¡¡written notice of completion of the internal administrative investigation, and the sustained charges of misconduct. The parties do not dispute that the investigation was formally completed on May 6, 2010. Officer O’Hern was terminated from the NOPD on October 27, 2010. Officer O’Hern appealed his termination with the Civil Service Commission (“CSC”), which affirmed the discipline imposed by the NOPD against Officer O’Hern.
Officer O’Hern filed this timely appeal with our Court, asserting four (4) assignments of error:
1) The CSC erred in affirming the discipline imposed by the NOPD because the investigation took over sixty days to complete in violation of La. R.S. 40:2531 B(7);
2) The CSC erred in affirming the discipline because the NOPD failed to provide him with a recording of his statement in violation of La. R.S. 40:2531 B(3);
3) The CSC erred in affirming the discipline because the NOPD failed to apprise him of the charges against him at the commencement of his statement in violation of La. R.S. 40:2531 B(l);
4) The CSC erred in affirming his discipline because his attorney was “muzzled” during Officer O’Hern’s statement in violation of La. R.S. 40:2531 B(4)(c).
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Stevens v. Dept of Police, 2000-1682, p. 5 (La.App. 4 Cir. *1039 5/9/01), 789 So.2d 622, 625, citing, Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984).
First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission’s factual findings, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Second, in evaluating the Commission’s determination as to whether the disciplinary action is |4both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. La. R.S. 49:964. Citations Omitted.
Stevens, p. 5, 789 So.2d at 625.
An employer cannot subject an employee who has gained permanent status in the classified city civil service to disciplinary action except for cause expressed in writing. Cornelius v. Department of Police, 2009-1459, p. 4 (La.App. 4 Cir. 6/9/10), 41 So.3d 617, 620, writ denied, 2010-1835 (La.10/29/10), 48 So.3d 1092. See also La. Const., Art. X, § 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Stevens, pp. 5-6, 789 So.2d at 625, citing, Newman v. Department of Fire, 425 So.2d 753 (La.1983).
Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cornelius, p. 4, 41 So.3d at 620, citing Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). The appointing authority has the burden of proving the impairment. La. Const., Art. X, § 8(A). The appointing authority must prove its case by a preponderance of the evidence. The appointing authority has the burden of proving by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained' of impaired the efficiency of the public service. Cornelius, pp. 4-5, 41 So.3d at 620. The appointing authority must also prove the actions complained of bear a real and substantial relationship to the efficient operation of the public service. Id. While these facts must be clearly established, they need not be established beyond a reasonable doubt. Id.
IfiThe Civil Service Commissions (“CSC”) has the exclusive authority to hear and decide all removal and disciplinary cases. The Commission’s decision is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const, art. X, § 12(B). A review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly wrong standard. Russell v. Mosquito Control Bd., 2006-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40. On legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. Id. However, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review. Id.
In the first assignment of error raised by Officer O’Hern, he argues that the CSC erred in affirming his termination because the administrative investigation conducted by the NOPD exceeded the sixty day limit provided by La. R.S. 40:2531 B(7). He asserts that the administrative investigation of his conduct began on December 12, 2009, the day of the incident, but it did not conclude until May 6, 2010. He argues *1040 that the DI-1 disciplinary investigation began on December 12, 2009, rather than on March 5, 2010, because he was issued the NOPD’s form referencing the beginning of the investigation on December 12, 2009. He further argues that he was not presented a “Notice to Accused Law Enforcement Officer,” which signaled the end of the administrative investigation in accordance with La. R.S. 40:2531 B(7), until May 2010. Thus, he concludes that the length of the investigation violated the sixty-day limit specified in La. R.S. 40:2531 B(7) because the NOPD took 136 days to complete the investigation. He further argues that this was a violation of his Bill of Rights.
|ñLa. R.S. 40:2531 B(7), reads in pertinent part:
(7) When a formal and written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disci-plinary hearing or a determination of an unfounded or unsustained complaint. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity. (Emphasis Added).
Officer O’Hern asserts that the manner in which the administrative investigation took place was a violation of his Bill of Rights because he was an officer under investigation facing possible disciplinary action, demotion, or dismissal. Thus, the sixty-day rule applied to him. He asserts that the NOPD’s argument that the initial investigation was one of a criminal investigation, thus | polling the sixty-day rule is inapplicable to this matter because a criminal investigation does not have a possible result of disciplinary actions, and an administrative investigation does, which was the result of his investigation.
The NOPD contends that the initial investigation which began on December 12, 2009, the date of the occurrence, was a criminal investigation. The NOPD maintains that it conducts two types of investigations with every incident: criminal and administrative. Administrative investiga *1041 tions deal with those stemming from complaints which originate from within the police department; whereas criminal investigations pertain to incidents and conduct which are criminal in nature.
The NOPD asserts that in the matter sub judice, a “rank” initiated investigation began on December 12, 2009, when, Sgt. Jones prepared the criminal investigation for review by the D.A.’s office. It asserts that Sgt. Jones investigated the incident, assisted in the preparation of subpoenas for Officer O’Hern’s medical records, procured copies of crime scene pictures, and interviewed witnesses. It contends that this criminal investigation led to the arrest of Officer O’Hern in January 2010. The NOPD further argues that Sgt. Jones submitted his criminal investigation report to the D.A.’s office on January 26, 2010, and the administrative investigation did not begin until March 5, 2010, when the criminal investigation was converted into an administration investigation. The NOPD avers that at this juncture, when the administrative investigation began, Officer O’Hern was provided notice that an administrative statement was to be rendered. The investigation was officially completed on May 6, 2010. The NOPD avers that the sixty-day rule on which Officer O’Hern relies is not applicable to this matter because of his criminal conduct on the day of the incident. The discharge of a weapon was a criminal act that required an initial investigation. The NOPD | ^contends that though an investigation began on December 12, 2009, and was not completed until May 6, 2010, the initial investigation was criminal in nature and the administrative investigation did not begin until March 5, 2010, thus, the sixty-day rule relied on by Officer O’Hern is inapplicable.
Our Court has held that administrative investigations are subject to the general sixty-day rule as per La. R.S. 40:2531 B(7). However, the statute also states in part: “[njothing in this paragraph shall limit an investigation of alleged criminal activity.” This language suggests that a criminal investigation is distinct from a civil administrative investigation.
In the matter sub judice, the record does not indicate that the CSC incorrectly applied the statute at issue. The CSC was presented with evidence showing: 1) that on December 12, 2009, Officer O’Hern discharged his service revolver while on duty; 2) that at the scene of the incident, the NOPD believed that Officer O’Hern was engaged in a gun battle with an unknown perpetrator; 3) that the NOPD came to the realization that Officer O’Hern was under the influence of several prescription pills and a large quantity of alcohol while on duty, when he discharged his weapon into his vehicle in a public location of the city. Further, the NOPD records presented to the CSC indicate that due to the circumstances surrounding the incident, Sgt. Jones was placed on notice to investigate the matter beginning on December 12, 2009, and he collected evidence to present to the D.A.’s office, to determine whether the matter was to be prosecuted or handled internally by the NOPD. Based on the criminal investigations conducted by Sgt. Jones, Officer O’Hern was arrested in January 2010. Upon his release, he was placed on desk duty by the NOPD so that the NOPD could then conduct its administrative investigation.
19Here, it is clear that the administrative investigation did not begin until March 5, 2010, when the NOPD informed Officer O’Hern that his statement was required to initiate the administrative investigation. Sgt. Jones, at the CSC hearing, testified that because of the incriminating circumstances of the incident, a criminal investigation was required prior to an administrative investigation to determine whether *1042 Officer O’Hern was to be prosecuted by the D.A.’s office. As stated above, La. R.S. 40:2531 B(7) provides that all administrative investigations must abide by the sixty-day rule. However, the statute also provides that nothing must interfere with a criminal investigation. Furthermore, the jurisprudence of Louisiana Courts establishes that nothing must interfere with a criminal investigation, and that a criminal investigation tolls the time limit for the administrative investigation.
For instance, in Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 2006-0081, pp. 4-5 (La.App. 5 Cir. 7/25/06), 935 So.2d 849, 852, an officer was terminated from the Harahan Police Department because of three disciplinary actions for his failure to report an incident timely, his misuse of sick time, and for his submission of a false police report concerning the alleged vandalism of his police unit vehicle. The Officer appealed his termination arguing that the disciplinary investigation took more than sixty days as required by La. R.S. 40:2531 B(7), and therefore the disciplinary proceeding should be set aside. The Fifth Circuit sustained the officer’s termination, finding no violation of La. R.S. 40:2531 B(7) because the preliminary investigation of the officer that led to his criminal prosecution by the district attorney was an inquiry into criminal activity, and was not governed by the sixty-day rule, and the subsequent investigation was completed within sixty days. Id. The Court found that the disciplinary action did not begin until the completion of the criminal investigation by the D.A.’s office, |1ftand that the subsequent investigation was completed within sixty days. Id., p. 6, 935 So.2d at 853.
The matter sub judice is comparable to that of Wyatt. Here, the start of the administrative investigation did not begin until the completion of the criminal investigation by the NOPD. The record reflects that a criminal investigation was conducted by the NOPD, which was then referred to the D.A.’s office. The record indicates that the criminal investigation conducted by the NOPD began on December 12, 2009, and ended on or before March 5, 2010. Officer O’Hern subsequently pled guilty to the charge of “Criminal Mischief’ based on the investigation by the NOPD. The record further indicated that the administrative investigation leading to the termination of Officer O’Hern began on March 5, 2010, ending on April 26, 2010, with the official end date unopposed by either party being May 6, 2010. The dates provided reveal that the administrative investigation was within the sixty-day time period because as in Wyatt, the initial investigation conducted was an inquiry into criminal activity. Accordingly, Officer O’Hern’s assertion that the investigation violated his Bill of Rights, and that he was not afforded the due process outlined in La. R.S. 40:2531 B(7), is without merit.
Furthermore, as the Supreme Court recognized in Bannister v. Dep’t of Streets, 95-0404, p. 7 (La.1/6/96), 666 So.2d 641, 646, the appointing authority is charged with the responsibility of taking disciplinary action against an employee for impairing the efficiency of public service. To concentrate solely on the possible prejudice to the employee for any delayed decision ignores the rights and duties of the appointing authority to protect the public. Additionally, “the public puts its trust in the police department as a guardian of its safety, and it is essential that the | nappointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust.... ” Stevens, p. 8, 789 So.2d at 627.
Here, Officer O’Hern ingested several pills that clouded his judgment and inter *1043 fered with his abilities to perform his job duties. He ingested two pills shortly after he reported to work. Officer O’Hern stated that within that same hour, while at work, he ingested at least ten more pills, in addition to a large quantity of whiskey. He then left his assigned post, went to his personal vehicle and drove it while he was under the influence of pills and alcohol, above the legal intoxication limit. Officer O’Hern drove his vehicle to the top of a parking garage and discharged his service issued weapon sixteen times into the body and windows of the vehicle.
It is undisputed that Officer O’Hern impaired the efficiency of public service, and was unable to perform his job as a police officer to protect and serve the community. Officer O’Hern disregarded his safety and the safety of the community when he decided to ingest numerous pills and alcohol shortly after he report to work. He placed the lives of the community at stake when while at work and in the public eye, ingested several pills and alcohol, and then drove his vehicle. Officer O’Hern posed a threat to public safety while he was driving under the influence of pills and alcohol, severely above the legal intoxication limit. Furthermore, due to his impaired mental state, Officer O’Hern then decided to discharge his gun into his vehicle sixteen times.
Based on Officer O’Hern’s actions on the night of December 12, 2009, the NOPD had the responsibility to discipline him in conformity with his actions. Any possible delays or prejudice that might have arisen in the investigative process is |12miniscule compared to the actions of the Officer on the night of the incidents. We find that this assignment of error is without merit.
In his second assignment of error, Officer O’Hern argues that the NOPD failed to provide him with a recording of his statement, a violation of La. R.S. 40:2531 B(3). He asserts that the CSC erred in holding that the appointing authority had the option of providing the officer with either a copy of the recording or a transcript of the officers statement, and that since a transcript was provided, there was no violation of La. R.S. 40:2531 B(3). He asserts that this is an error because the statute provides that the officer has the choice of the two, not the appointing authority. He further asserts that he made several requests from the ranking officers of the NOPD for a copy of the recording of the statement, but was refused several times since he had been provided with the transcript. He alleges that this refusal was a violation of his Bill of Rights.
The NOPD avers that they provided a copy of the transcript to Officer O’Hern, which he received, made several notes on the transcribed statement, and returned it to Sgt. Jones. The NOPD further avers that besides Officer O’Hern being provided a copy of the transcript, his counsel who was present at the hearing made a recording of the statement while it was being conducted.
La. R.S. 40:2531 B(3) provides in pertinent part:
(3) All interrogations of any police employee or law enforcement officer in connection with the investigation shall be recorded in full. The police employee or law enforcement officer shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements upon his written request.
In the matter sub judice, Officer O’Hern was provided a transcript of the statement upon request. Though he requested a recorded copy .of the statement, a 11stranscript was provided to him, which was in accordance of the statute. The statute provides that either a copy of the recording of the statement or a transcript *1044 should be provided. (Emphasis added). Furthermore, his counsel had a copy of the recording of the statement at his disposal. Because the statute provides that either a recorded copy or a transcript has to be provided to the officer, the NOPD provided Officer O’Hern with a transcript in accordance with the statute. (Emphasis added). Therefore, Officer O’Hern’s assignment of error is without merit.
In his third assignment of error, Officer O’Hern avers that the NOPD failed to apprise him of all of the charges against him prior to his statement. He argues that this is a violation of La. R.S. 40:2531 B(l)[3] because at the outset of the statement, he was only informed of one charge. However, at the conclusion of the investigations, and when Sgt. Jones presented him with his termination notice, the NOPD had listed as many as seven charges against him. He avers that at the beginning of the statement, he was only aware of the charge of Rule 2, Moral Conduct, Paragraph 1. However, when he was presented with the Notice of Termination, there was a list of additional charges of which he did not have any prior knowledge.
The NOPD avers that it provided Officer O’Hern a notice of the main charge against him because at the outset of his statement, that was all that the NOPD was 1 , ¿aware of and, according to the statute, providing the accused with at least the main charge was sufficient. The NOPD avers that Officer O’Hern was advised that he was being investigated for misconduct that occurred on December 12, 2009, and the notice provided Officer O’Hern with the information that he was being investigated for the charge of “Rule 2; Moral Conduct, Paragraph 1: Adherence to Law, to wit, R.S. 14:94 Relative to Illegal Use of Weapon or dangerous instrumentalities.” The NOPD further asserts that of the seven final charges against Officer O’Hern, six were related to Officer O’Hern’s improper use of his service revolver, and the seventh charge related to his consumption of alcohol on duty, which also occurred on the day of the incident.
Knight v. Dep’t of Police, 619 So.2d 1116, 1118 (La.App. 4 Cir.1993) states that “[njotice and an opportunity to respond are the basic requirements of due process, and before a tenured employee is discharged, he is entitled to oral or written notice of the charges against him, an explanation of his employer’s evidence, and an opportunity to present his side of the story.” Id, citing Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).
In Knight, the Superintendent of Police ordered Captain Lorenza Knight to involuntarily retire from the New Orleans Police Department for racist remarks the officer made about another officer. Knight appealed his termination, arguing that the investigation violated his Bill of Rights because he was not informed of the charges against him before his statement was officially taken. Id. This Court, on appeal, held that “while it is true Major Salles did not specify the exact formal *1045 charge, he told Knight: ‘The nature of this investigation is your alleged conversation with Officer John Reilly of the command desk when you used the h-yvord “n — r” several times during that conversation.’ ” Id. at 1118. The Court went on to opine that “R.S. 40:2531 does not require that the law enforcement officer know the exact charges that may be brought against him. All that is required is that the investigating agency inform the police officer ‘of the nature of the investigation.’ ” Id.
Here, Sgt. Jones advised Officer O’Hern of the formal charge prior to the statement. He was advised that he was being investigated for misconduct that occurred on December 12, 2009; specifically he was informed that he was being investigated for his misuse of his service revolver while on duty. This advisement of the formal charge against him is sufficient under La. R.S. 40:2531. As stated in Knight, the statute does not require that an officer be informed of all charges against him at the outset of the statement. Thus, the requirements of the statute were fulfilled when Officer O’Hern was informed that he was being investigated for the misconduct which occurred on December 12, 2009. Therefore, this assignment of error is without merit.
In his final assignment of error, Officer O’Hern contends that his counsel was “muzzled” at his statement, and hence was a violation of La. R.S. 40:2531 B(4). He argues that his counsel was denied the right to offer objections and comments on the record. Therefore, the CSC erred in contending that his counsel was allowed to actively participate in the statement, and that there was no violation of the Bill of Rights. Officer O’Hern asserts that La. R.S. 40:2531 B(4)(c) provides that the law officer facing the investigation has the right to counsel, and further the counsel is allowed to offer advice to the officer and make statements on the record regarding any questions asked of the officer at any juncture in the course of the investigation. However, at the statement hearing, his counsel was informed |1fion two occasions that she could not interrupt the statements being asked of or made by Officer O’Hern. He further avers that the NOPD instructed his counsel that she had to wait until the end of the statement to interrupt, offer any advice, or counsel his client on any matter. Officer O’Hern asserts that this was a violation of the statute because the statute did not provide that the counsel is to wait until the end of the statement to offer any advice to her client.
The NOPD argues that Officer O’Hern’s counsel was not prevented from offering advice to his client as provided by La. R.S. 40:2531 B(4)(c). It asserts that Officer O’Hern’s counsel made several comments on the record and also advised Officer O’Hern as necessary before the statement, during, and afterwards. The NOPD asserts that because the statement is a compelled statement from the officer, his counsel’s attempts to impede the process by interjecting at inappropriate times was a violation of the purpose of obtaining the compelled statement. They assert that notwithstanding any “muzzling” of Officer O’Hern’s counsel, counsel was able to fully participate in the process, and able to advise her client.
La. R.S. 40:2531 B(4)(a) and (c) provides that:
(4)(a) The police employee or law enforcement officer being questioned, whether as a target or as a witness in an administrative investigation, shall have the right to be represented by counsel, other representative, or both, of the police employee or law enforcement officer’s choice.
*1046 (c) The police employee or law enforce- ■ merit officer’s representative or counsel shall be allowed to offer advice to the employee or officer and make statement on the record regarding any question asked of the employee or officer at any interrogation, interview, or hearing in the course of the investigation.
In the matter sub judice, a review of the record reveals that Officer O’Hern had adequate time to obtain counsel and be advised by counsel prior to his 117statement being taken, or prior to being questioned. The record further reveals that Officer O’Hern was present with counsel when he made his statements, and his counsel was able to counsel and offer advice on all aspects. As stated by the CSC and the NOPD, the statements are compelled statements to aid in the investigation of the misconduct; counsel could be present and offer advice. The officer’s counsel could not hinder the statement/interrogation process by objecting to the questions asked or the manner in which the questions were answered by Officer O’Hern. Here, the record reflects that Officer O’Hern’s counsel attempted to hinder the statements on several occasions, hence the instructions by Sgt. Jones for counsel to wait until the end of the compelled statement to ask questions or make any objections, were reasonable. Contrary to the arguments made by Officer O’Hern, the statute was not violated because Officer O’Hern was permitted to be present with counsel, who had adequate time to consult with him, on and off the record. Thus, this assignment of error is without merit.

DECREE

For the foregoing reasons, we affirm the judgment of the Civil Service Commission terminating Officer Patrick O’Hern.
AFFIRMED
TOBIAS, J., dissents and assigns reasons.

. Clonazepam is a benzodiazepine drug having anxiolytic, anticonvulsant, muscle relaxant, and hypnotic properties, which was approved by the Food and Drug Administration for treatment of epilepsy. http://en.wikipedia. org/wiki/Clonipin#Formulations.

. The legal limit for intoxication is 0.08% while driving a vehicle. See La. R.S. 14:98.

. La. R.S. 40:2531 B(l) provides in pertinent part:
B. Whenever a police employee or law enforcement officer is under investigation, the following minimum standards shall apply:
(1) The police employee or law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The police employee or law enforcement officer shall be allowed to make notes.