JOY COSSICH LOBRANO, Judge.
| Niki a Adams (“Adams”), an employee of the New Orleans Police Department (“NOPD”) classified as a Police Officer IV, timely appealed the decision of the New Orleans Civil Service Commission (“CSC”), upholding her termination by Superintendent Roñal Serpas (“Supt. Serpas”), the appointing authority. Supt. Serpas terminated Adams for violating NOPD internal rules regarding adherence to state law[1] after she pled nolo contendere to two misdemeanor counts of simple cruelty to animals[2] in the 40th Judicial District Court for St. John the Baptist Parish. For the following reasons, we affirm the decision of the CSC.
|2The facts leading up to Adams’ termination are as follows. In October 2009, Adams and her boyfriend resided in a house in LaPlace, Louisiana, along with his two dogs, “Tyson” and “Dusty.” At some point, her boyfriend had to leave their home for an extended period of time, leaving the dogs in Adams’ care. In early January of 2010, Adams noticed the dogs were rapidly losing weight despite their daily feedings. She called her boyfriend, who recommended that she increase the food portions. He also told her that he would bring the dogs to a veterinarian within two weeks if they continued to lose weight.
Shortly thereafter, Dusty, a pit bull, died. Adams, who was four months pregnant and concerned the dogs might have contracted a disease, called the St. John the Baptist Parish Animal Control Unit. Initially, the Animal Control Unit said they could not assist Adams, but when she explained that the other dog in her care appeared to be sick, they agreed to help. The Animal Control Unit officers went to *381 the home, interviewed Adams, observed the area where the dogs were kept, and then left with the remains of the deceased dog.
The following day, on January 21, 2010, Adams was arrested pursuant to a warrant issued by the St. John the Baptist Parish Sheriffs Office, relative to one count of aggravated animal cruelty and one count of simple animal cruelty. On that same date, upon learning of Adams’ arrest, Captain John Thomas of the NOPD Public Integrity Bureau (“PIB”) sent Sergeant Janerio Sanders (“Sgt. Sanders”) to St. John the Baptist Parish jail to investigate the matter. Sgt. Sanders |3spoke to Adams at that time and informed her that she was under investigation by the PIB.[3]
Subsequently, a necropsy report from the Louisiana Animal Disease Diagnostic Laboratory established that Dusty had died as a result of severe heart worms. Notably, the report indicated the dog had been well fed.
The St. John the Baptist Parish District Attorney’s Office filed a bill of information on March 5, 2010, charging Adams with two counts of simple cruelty to animals for failing to provide veterinary care. On September 16, 2010, Adams entered a nolo contendere plea to both counts, and was sentenced to ninety (90) days suspended and ordered to perform eighty (80) hours of community service and to pay court costs and a fine. On October 21, 2010, Sgt. Sanders sent Adams written notice pursuant to La. R.S. 40:2531(B)(7), outlining the sustained charges of misconduct and notifying her that the administrative investigation was complete.[4] October 27, 2010, Adams had the opportunity to present facts in mitigation and to explain her conduct at a hearing before NOPD Assistant Superintendent Marlon Defillo (“Asst. Supt. Defillo”). Later that same day, Supt. Serpas issued Adams a disciplinary letter, terminating her employment.
Adams appealed this decision, asserting unlawful termination for lack of cause. A hearing was held before the CSC Hearing Examiner on July 6, 2011. On October 26, 2012, the CSC denied Adams’ appeal, finding the NOPD established |4by a preponderance of evidence that it had disciplined Adams for cause and that it had not abused its discretion by terminating her based on her admission to two misdemeanors, even though they were unrelated to her job.
Adams timely appealed, raising four assignments of error.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Pope v. New Orleans Police Dept., 2004-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The CSC is not charged with such discipline. “[T]he authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty.” Pope, 2004-1888, pp. 5-6, 903 So.2d at 4.
“The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of *382 activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.” Cure v. Dept. of Police, 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 2006-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. “The protection of civil service employees is only against firing (or other discipline) without cause.” Cornelius v. Dept. of Police, 2007-1257, 2007-1258, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 2000-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
|sThe decision of the CSC “is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review.” Cure, 2007-0166, p. 2, 964 So.2d at 1094, citing La. Const. art. X, § 12. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this Court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Cure, 2007-0166, p. 2, 964 So.2d at 1094-95. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id., p. 2, 964 So.2d at 1095.
In the first assignment of error, Adams argues the CSC erred in upholding her termination because the appointing authority failed to prove by a preponderance of the evidence that her actions impaired the efficient operation of the public service. Adams concedes that pursuant to the NOPD Operations Manual the appointing authority has the power to discipline a police officer for pleading nolo contendere to a misdemeanor. However, she claims the misdemeanor must have impaired the efficient operation of the department. She contends that Supt. Serpas failed to testify how her pleading nolo contendere to two counts of simple cruelty to animals, based on neglect, impaired the efficient operation of the NOPD. Adams points out that the underlying violations occurred in St. John the Baptist Parish while she was off duty and were unrelated to her duties as a police officer.
In Regis v. Department of Police, 2013-1124 (La.6/28/13), 121 So.3d 665, the NOPD issued a letter of reprimand to an officer who admitted violating La. R.S. 32:361.1 while off duty by driving her personal vehicle with tinted windows without a mandated security exemption from the Louisiana State Police. The officer appealed her discipline to the CSC; the appeal was denied. The officer then appealed the CSC’s decision to this Court, arguing the NOPD failed to offer any testimony or other evidence to prove that her actions impaired the efficient operation of the police department. This Court agreed and reversed the CSC, concluding that a violation of a public safety statute, alone, was not sufficient to prove the officer’s dereliction had impaired the efficient operation of the NOPD.[5] On a writ application from the NOPD, the Louisiana Supreme reversed and reinstated the CSC judgment, upholding .the discipline. Id., p. 3, 121 So.2d at 666. The Court stated:
In the instant case, the record contains sufficient evidence to support the letter of reprimand. The NOPD proved *383 the occurrence of the complained of activity as Regis acknowledged her window tint was in violation of [La. R.S. 32:361.1(B)] and that she had not received an exemption sticker from the Louisiana State Police.
Additionally, Regis’s conduct “impaired the efficiency” of the NOPD and “bears a real and substantial relationship to [its] efficient operation.” Cittadino v. Dep’t of Police, 558 So.2d 1311, 1315 (La.App. 4 Cir.1990). Police officers are charged with enforcing the motor vehicle and traffic laws; “a police officer’s failure to comply with the laws thus gravely impairs the efficiency of the department.” Davis v. Dep’t of Police, 590 So.2d 850, 852 (La.App. 4 Cir.1991) (affirming discipline for an officer who caused a traffic accident). When an officer violates the law, “it casts doubt upon the credibility of the [police department] to ably conduct one of its principal functions.” Berry v. Dep’t of Pub. Safety & Corr., 01-2186, p. 13 (La.App. 1 Cir. 9/27/02); 835 So.2d 606, 615 (affirming discipline for a state trooper for failing to report earnings from off-duty details in violation of federal tax law); see Thornabar v. Dep’t of Police, 08-0464, p. 4 (La.App. 4 Cir. 10/15/08); 997 So.2d 75, 78 (officer’s failure to hon- or a court’s subpoena impaired the efficiency of the NOPD as it had “the appearance of a constructive contempt of court.”); Cittadino, 558 So.2d at 1316 (officer, by offering to sell illegal poker machines, impaired the efficient operation of the NOPD). Moreover, since the public puts its trust in the police department as a guardian of its safety, it is essential the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. See Newman, 425 So.2d at 756. Accordingly, the [CSC’s] decision was not “arbitrary or capricious,” and the [CSC] properly denied Regis’s appeal.
Id., pp. 2-3, 121 So.3d at 665-66.
The record in the present case contains sufficient evidence to support Adams’ termination. The NOPD presented Adams’ nolo contendere plea to two misdemeanor counts of simple cruelty to animals from St. John the Baptist Parish. The plea established that Adams violated La. R.S. 14:102.1A(l)(c) and NOPD Rule 2; Moral Conduct, Paragraph 1-Adherence to Law. Sgt. Sanders testified at the CSC hearing that Adams admitted in her administrative statement that she had custody of the dogs and did not seek veterinary care despite observing their rapid weight loss. Also, Supt. Serpas confirmed that Adams’ commission of the misdemeanors violated the NOPD’s internal rules. Considering Adams violated both state law and NOPD internal rules, the appointing authority had cause to discipline Adams because her conduct impaired the efficient operation of the department. Thus, we do not find the CSC’s decision to uphold the Adams’ termination was arbitrary and capricious.
|sIn the second assignment of error, Adams argues the CSC erred in upholding her termination because the punishment is excessive and not commensurate with her offense.
In determining whether an appointing authority properly imposed disciplinary action against a classified employee, the reviewing court must consider whether the punishment is commensurate with the offense. Staehle v. Department of Police, 98-0216, p. 5 (La.App. 4 Cir. 11/18/98), 723 So.2d 1031, 1034. The evidence in the record must establish a rational basis for the imposed discipline. Id., p. 6, 723 So.2d at 1034.
*384 Rule IX, § 1.1 of the Rules of the Civil Service Commission for the City of New Orleans provides that when a classified employee has committed an act to the prejudice of the service or otherwise has been subjected to corrective action, the appointing authority shall take action as warranted by the circumstances to maintain the standards of effective service. This action may include removal from the service. See Rule IX, § 1.1(a).
Based on a review of the evidence, we conclude the termination imposed in this case is both rationally based and commensurate with the dereliction. Supt. Ser-pas testified that he considered each disciplinary action on a case-by-case basis. In Adams’ case, he considered the disciplinary guidelines, her history with the NOPD[6], and the fact that she violated a state criminal statute on two counts and the NOPD internal regulations. Moreover, in the disciplinary letter to Adams, Supt. Serpas emphasized that she “offered nothing which would tend to mitigate, justify |9or explain [her] behavior” when she had the opportunity to do so at the hearing before Asst. Supt. Defillo.
Regarding the third assignment of error, Adams contends that the appointing authority’s investigation did not comply with the sixty-day time limit set forth in La. R.S. 40:2531(B)(7) and, thus, the imposed discipline is an absolute nullity under La. R.S. 40:2531(C).
For purposes of La. R.S. 40:2531(B)(7), Adams contends the complaint was initiated on January 21, 2010, when Capt. Thomas sent Sgt. Sanders to the St. John the Baptist Parish jail to interview and inform her that she was under investigation by the PIB for allegedly violating animal cruelty laws. Adams claims that the investigation ended on October 22, 2010, when she received the written notice from the NOPD outlining the sustained charges of misconduct and informing her that the administrative investigation was complete. Because more than sixty days elapsed between the initial complaint and the completion of the investigation, Adams argues the NOPD failed to comply with sixty-day limitation under the statute, rendering the imposed discipline an absolute nullity. The NOPD, on the other hand, contends that the administrative investigation and sixty-day period commenced September 16, 2010, upon Adams’ entering the nolo contendere plea to the misdemeanors.
In support of her argument, Adams cites this Court’s decisions in O’Hern v. Department of Police, 2012-0600 (La.App. 4 Cir. 12/19/12), 111 So.3d 1037, on rehearing (La.App. 4 Cir. 4/25/13), 111 So.3d 1037 and Robinson v. Department of Police, 2012-1039 (La.App. 4 Cir. 1/16/13), 106 So.3d 1272, writ denied, 2013-0528 (La.4/12/13), 110 So.3d 1081. However, the Louisiana Supreme Court recently granted writs and reversed the O’Hern decision in O’Hern v. Department of Police, 2013-1416 (La.11/8/13), 131 So.3d 29, 2013 WL 5951809, specifically holding that this Court erred in relying on its writ denial in Robinson, noting “a denial of a writ has no precedential value.” Id., p. 3, 131 So.3d. at 32. (citations omitted).
Referring to La. R.S. 40:2531, the Court in O’Hern stated:
The language found in La. R.S. 40:2531 provides that an investigation shall be initiated within fourteen days of a formal complaint and, unless involving allegations of criminal activity, must be completed within sixty days. Specifical *385 ly, the statute provides: “[ejxcept as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days ...” However, the statute further states, “... nothing in this Paragraph shall limit any investigation of alleged criminal activity.”
O’Hern, 2013-1416 at p. 2, 131 So.3d. at 31 (emphasis in original).
In O’Hem, O’Hern left his assigned duty on December 12, 2009, went to his private vehicle, drove to the top floor of a downtown parking garage, consumed a bottle of whiskey and ingested several pills. He then tasered himself and discharged his firearm multiple times. Responding officers found O’Hern incapacitated and took him to a medical facility where he informed personnel that he had attempted to commit suicide. His blood alcohol content exceeded the legal limit. O’Hern, 2013-1416 at p. 1, 131 So.3d. at 30.
On the same day, Sgt. Jones of the PIB began an investigation, issuing O’Hern a Form DI-1: “Initiation of a Formal Disciplinary Investigation,” which placed O’Hern on notice that his actions gave rise to a possible violation of “Rule 2: Moral Conduct; Paragraph 1: Adherence to Law,” relative to the illegal use of weapons. Pursuant to this notice, the NOPD began a criminal investigation of In O’Hern’s actions. On December 16, 2009, Sgt. Jones requested that O’Hern submit a criminal statement, which O’Hern refused. O’Hern was later arrested and pled nolo contendere to a violation of La. R.S. 14:94, relative to the illegal use of weapons and dangerous instrumentalities. O’Hern, 2013-1416 at p. 1, 131 So.3d at 30.
On March 5, 2010, the NOPD began its administrative investigation and sent notice to O’Hern compelling an administrative statement, which took place on March 11, 2010. On April 27, 2010, Sgt. Jones sent O’Hern written notice pursuant to La. R.S. 40:2531(B)(7), outlining the sustained charges of misconduct and notifying him that the investigation was complete. O’Hern was subsequently terminated. O’Hern, 2013-1416 at p. 1, 131 So.3d at 30.
O’Hern appealed his termination, asserting a violation of La. R.S. 40:2531(B)(7), on the basis that the investigation was not completed within sixty days. Following a hearing, the CSC denied the appeal. O’Hern then appealed the CSC’s decision to this Court, which originally affirmed the decision. On rehearing, however, this Court reversed its decision and that of the CSC, finding the formal investigation exceeded the sixty-day time limit.[7] O’Hern, 2013-1416 at p. 2, 131 So.3d at 30.
On a writ application from the NOPD, the Supreme Court reversed, finding no violation of the sixty-day time limit set forth in La. R.S. 40:2531(B)(7), because the investigation involved allegations of criminal activity. The Supreme Court noted that “[t]he plain language of the statute suggests a criminal investigation is distinct from a civil administrative investigation.” O’Hern, 2013-1416 at p. 2, 131 So.3d at 31. The Court reiterated that “a criminal investigation tolls the time limit for the administrative investigation.” O’Hern, 2013-1416 at p. 3, 131 So.3d at 31, citing Franklin v. Department of Police, 2010-1581 (La.App. 4 Cir. 4/6/11), (unpub’d) writ denied, 69 So.3d 1157 (La.9/23/11) and *386 Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 2006-81 (La.App. 5 Cir. 7/25/06), 935 So.2d 849. Given the facts, the Court determined that the preliminary investigation was a criminal investigation because Sgt. Jones initially requested a criminal statement and O’Hern was ultimately charged with a criminal violation. The Court concluded the sixty-day period within which to complete an investigation did not begin until the start of the administrative investigation on March 5, 2010, and was completed within sixty days. O’Hern, 2013-1416 at p. 4, 131 So.3d at 31.
Applying the reasoning of the O’Hem decision to this case, we find that Sgt. Sanders was conducting a preliminary inquiry into alleged criminal activity when he interviewed Adams at the St. John the Baptist Parish jail on January 21, 2010, the day of her arrest. As testified to by Sgt. Sanders, that inquiry became an administrative investigation once Adams entered her nolo contendere plea on September 16, 2010.[8] The administrative investigation ended on October 22, 2010, when Adams received notice, outlining the sustained charges of misconduct and informing her that the administrative investigation was complete. Because the administrative investigation began and ended within the required sixty-day period, we conclude the appointing authority did not violate La. R.S. 40:2531(B)(7).
113In the final assignment of error, Adams argues that the CSC Hearing Examiner erred by not allowing her to introduce testimony and documentary evidence of the NOPD’s disciplinary action against other officers with misdemeanor convictions. Specifically, Adams sought to introduce evidence of three NOPD officers who were employed despite DWI convictions. She contends the evidence demonstrates that her termination is extreme and disproportionate to the discipline imposed upon similarly situated officers. Adams also contends that NOPD’s hiring policy does not automatically disqualify an applicant with a misdemeanor conviction from being considered as a police recruit or classified officer, provided the misdemean- or is not a crime against a person or sexual offense.
Rule II, § 4.11(b) of the Rules of the Civil Service Commission for the City of New Orleans, states, “[t]he hearing examiner is empowered to administer oaths, rule on the admissibility of testimony and evidence and supplement the record with pertinent questions.” The record indicates that the hearing examiner excluded the evidence as irrelevant to the case and then allowed Adams to proffer it. After considering the evidence, we find the hearing examiner did not abuse his discretion in ruling it inadmissible. Furthermore, the proffered evidence does not negate the fact that Supt. Serpas had cause to terminate Adams given her nolo contendere plea to the two misdemeanors and prior disciplinary infractions.
Accordingly, for the above reasons, the decision of the CSC denying Adams’ appeal is affirmed.
AFFIRMED.

. NOPD Operations Manual Rule 2: Moral Conduct, Paragraph 1 — "Adherence to Law,” provides:
Employees shall act in accordance with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey the applicable laws. Neither ignorance of the law, its interpretations, nor failure to be physically arrested and charged, shall be regarded as a valid defense against the requirements of this rule.

. See La. R.S. 14:102.1A(l)(c).

. The record contains no evidence of a Form DI-1: "Initiation of a Formal Disciplinary Investigation,” the document utilized by the NOPD to initiate a formal disciplinary investigation.

. The record contains no evidence of the written notice; however, Adams acknowledged at the hearing and in her appeal brief that she had received it.

. Regis v. Department of Police, 2012-1692 (La.App. 4 Cir. 4/17/13), 115 So.3d 638 (Love, J., dissenting).

. Adams received a one-day suspension in July, 2007, for failing to timely sign a log book at the end of her shift. The imposed discipline was upheld in Adams v. Department of Police, 2008-0468 (La.App. 4 Cir. 2/12/09), 7 So.3d 763 (Bonin, J. dissenting).

. O’Hern, supra, 2012-0600 (La.App. 4 Cir. 12/19/12), 111 So.3d 1037, on rehearing (La. App. 4 Cir. 4/25/13), 111 So.3d 1037.

. Sgt. Sanders testified that his initial inquiry into Adams' arrest was a criminal investigation that became an administrative investigation on September 16, 2010, when Adams pleaded nolo contendere in St. John the Baptist Parish district court. Although Adams claims the administrative investigation began on January 21, 2010, the record contains no evidence that contradicts Sgt. Sanders' testimony.