Judge Roland L. Belsome
11 Appellant, Mario Cole, appeals the New Orleans Civil Service Commission’s (“CSC”) decision to uphold his termination by the New Orleans Police Department *254 (“NOPD”). Mr. 'Cole was terminated from his position as a police officer with the NOPD after he tested positive for morphine during a random drug test. For the reasons that follow, the CSC’s judgment is affirmed.
Statement of the Case
On the morning of January 8, 2013, Mr. Cole reported into work as a Police Officer with- the NOPD. He was informed that he had been selected for a random drug screening, which he failed when he tested positive for morphine.
Mr. Cole was placed on emergency suspension and the NOPD opened an internal investigation. Sergeant Lesia Latham Mims, who was assigned to conduct the investigation, interviewed both Cole. and his fiancée, Ms. Ashley Franks^ Mr. Cole told her that he injured his shoulder while lifting weights on January 7, 2013, and that when he told his fiancée, about the injury, she gave him a small, white' pill to take to relieve the pain. He claiméd that he believed the pill was simply ibuprofen or another over-the-counter pain reliever, and only learned it was morphine after he failed the drug test.
IsSergeant Mims submitted her report, and a pre-disciplinary hearing was scheduled. Deputy Superintendent Albert presided over the hearing and recommended that NOPD terminate Mr. Cole’s employment for violation of NOPD Rule 3, ¶7, Use of Drugs/Substance Abuse Testing. Superintendent Roñal Serpas concurred with the disciplinary recommendation, and Mr. Cole was issued a letter notifying him that he was terminated effective July 9, 2013.
Mr. Cole filed an appeal with the CSC, which was denied. This-appeal, followed.
Assignments of Error
On appeal, Mr. Cole argues that the CSC’s decision was arbitrary and capricious and an abuse of discretion in the following three ways: 1) by finding that Mr. Cole was under the influence of morphine when he reported to work on January 8, 2013; 2) by finding that there was a real and substantial relationship between the violation and an adverse impact to the operation of public service; and 3) by finding that ‘ termination was commensurate with the offense.
Law and Discussion
Employees in the classified service may only be disciplined for ’sufficient cause.[1] In an appeal before the CSC, the appointing authority must prove by. a preponderance of the evidence 1) the occurrence of the complained of activity, and 2) the conduct bore a real and substantial relationship to the 'efficient operation of the appointing authority.[2] If the CSC finds the appointing authority has met its burden of proof and had sufficient cause to issue discipline, it must then determine | aif the discipline was “commensurate with the offense.”[3] Therefore, the analysis has three steps, with the appointing authority bearing the burden of pr.oof at each.
The CSC’s decision “is subject to review on any question of law or fact upon appeal to this Court, and this Court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review.”[4] A reviewing court should not al *255 ter the CSC’s determinations. regarding good cause for discipline and the appropriateness of the disciplinary action unless the decision was “arbitrary, capricious, or characterized by an .abuse of discretion.”[5] The CSC’s decision is “arbitrary and capricious” if there is no rational basis for the action taken.[6]
On appeal, Mr. Cole argues that the CSC erred in finding that the NOPD met its burden of proving that he was under the influence of morphine on the date he failed the drug screening and that his actions impaired the efficient operation of the public service. He claims that he did not violate NOPD Rule 3, ¶ 7, despite the fact that he tested positive for morphine while on the job, because the morphine in his system did not actually impair him.
NOPD Rule 3, ¶ 7, Use of Drugs/Substance Abuse Testing states:
Employees shall be guided by the City’s substance abuse policy , as defined under Rule V, Section 9 of the Civil Service Rules and C.A.O. Policy Memorandum # 89 (Revised) dated 9/99. An employee shall not report to duty under the influence of any drug, medication, or other substance impairing his/her normal sensory and/or motor body functions.[7] (emphasis added)
[4The record in this case supports Mr. Cole’s termination. At the hearing before the CSC, Mr. Cole testified that he irritated his left shoulder working out the evening of January 7, 2013, at the sheriffs office gym in New Orleans. He stated that he did not believe he had necessarily -injured his shoulder so he saw no need to go to a doctor, but that when he was unable to sleep that night because of the pain he took a pill offered to him by his fiancée. He stated that he believed the pill was an over-the-counter pain reliever. He testified that he was aware of Ms. Franks’s morphine prescription, but that she had never offered him one of her pills prior to that night. He admitted to taking the morphine pill and being aware of NOPD policy that prohibits taking prescription medication prescribed to another person,
NOPD presented an expert witness in toxicology, Susan Bybee, who testified that Mr. Cole’s drug screening results[8] showed that he tested positive for morphine above the cutoff established by the NOPD.[9] In fact, Mr. Cole tested over fifty percent higher than the permitted cutoff.[10] Ms. Bybee stated that the side effects of morphine include sleepiness and dizziness.
Sergeant' Mims, the Public Integrity Bureau investigator assigned to Mr. Cole’s case, testified regarding her investigation. She stated that Mr. Cole informed her he mistakenly took the morphine pill on the night of January 7, 2013, after his fiancée *256 gave him what he believed to be an ibuprofen to alleviate pain from a workout related injury. She testified that, during the interview, Ms. Franks said that she did not tell Mr. Cole that the pill was from her morphine prescription, |fiand that Mr. Cole did not ask what kind of medication she was giving him. Sergeant Mims testified that NOPD policy prohibits an employee taking prescription medications that are not prescribed to him.
Deputy Superintendent Darryl Albert, who conducted Mr. Cole’s disciplinary hearing, testified that drug violations impact the efficient operation of the NOPD by putting the public at great risk because of the importance of officers being in their “right mind when dealing with the public.” He testified that dismissal was the appropriate penalty because “the City of New Orleans and police department do not tolerate substance abuse” and therefore have a “zero tolerance” policy against officers reporting to work under the influence. He indicated that it was irrelevant that there were no complaints about Mr. Cole’s behavior on the day he failed the drug screening because of the NOPD’s zero tolerance policy. He noted that while the Superintendent has the authority to order rehabilitation or a probationary period rather than termination, ultimately that decision is within the Superintendent’s discretion.
Based on the testimony and the evidence in the record, the CSC made the following findings of fact regarding the occurrence of'the complained of activity: 1) Cole ingested a pill that contained morphine on or about the night of January 7, 2013, 2) he reported to work the next day, 3) during his shift he was instructed to report for a random drug test, 4) the drug test was performed pursuant to the Commission’s guidelines, and 5) the urine specimen produced by Cole on January 8, 2013 contained concentrations of morphine that exceeded the limits established by the City of New Orleans and NOPD. The CSC determined that the NOPD had established by a preponderance of the evidence that Mr. Cole reported to work under the influence of morphine on January 8,2013.
IisAs to the NOPD’s burden of proving that Mr. Cole’s actions impaired the efficient operation of the NOPD, the CSC found that Mr. Cole reported to work under the influence of morphine, but did not notify the NOPD that he had consumed medicine that could render him a risk to the public and/or his coworkers. This, the Commission found, “severely compromise[d] NOPD’s ability to competently and safely serve the public.” Thus, the CSC found that NOPD met its burden of proof regarding this element of the analysis.
These findings of fact concerning the presence of morphine in Mr. Cole’s system and the effect that Mr. Cole’s actions had on the NOPD’s efficient operation are not manifestly erroneous. Considering that it is undisputed that Cole took the morphine on January 7, 2013, and that the side effects of such medication can compromise the ability of a police officer to perform his duties, the CSC was not clearly wrong in finding that the NOPD proved the first and second element of the analysis.
Finally, Cole argues that his termination was not commensurate with the offense because termination, the most severe discipline available, was not appropriate in this situation.
Regarding discipline for a substance abuse violation, CAO Policy Memo 89 indicates that a first offense violation of the substance abuse policy is a terminable offense under a limited set of circumstances, one of those being the use of alcohol or drugs while working. The Policy Memo further provides that off duty conduct *257 should result in termination “if the City believes that this off-duty conduct possibly could involve any of the following: affects such individual’s safe performance of the job; jeopardizes the safety of the other employees, the general public or the City’s property ....”
|7Based on a review of the evidence, we find that termination was commensurate with the offense. The CSC determined that because police officers are in a position to take someone else’s life or liberty, they cannot be under the influence of narcotics while wielding such power. The CSC went on to state that the “NOPD has not only an interest, but a responsibility to monitor and prevent illegal or illicit drug use by Officers.” The CSC noted that it recognized that other forms of discipline were available to the NOPD, but found that termination of an officer for testing positive for morphine during his shift was not arbitrary or capricious. We therefore find that the CSC did not abuse its discretion in upholding Mr. Cole’s termination.[11]
Conclusion
For the reasons set forth above, we affirm the decision of the CSC to deny Mr. Cole’s appeal and uphold his termination by the NOPD.
AFFIRMED
JENKINS, J., CONCURS IN THE RESULT

. La. Con. Art. X, § 8(A).

. Gast v. Dep’t of Police, 2013-0781, p. 3 (La. App. 4 Cir. 3/13/14), 137 So.3d 731, 733.

. Id., 2013-0781, 197 So.3d at 734.

. Adams v. Dep’t of Police, 2013-0200, p. 5 (La.App. 4 Cir. 12/18/13), 131 So.3d 378, 382, writ granted, 2014-0140 (La. 3/21/14), 135 So.3d 624, quoting Cure v. Dep’t of Police, 2007-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094.

. Cure, 964 So.2d at 1094-95.

. Id., at 1095.

. CAO Policy Memorandum # 89, cited in the termination letter to Cole, defines a prohibited substance as including “the presence of any confirmed detectible amount of those substances listed in the following sections in the employee/person while working regardless of when or where the substance cleared their systems.”

. Rosemary Thomas of Concentra Medical Center testified as to the policies of Concen-tra, the company that conducted Mr. Cole’s drug screening, as well as to the authenticity of Mr, Cole’s drug screening results.

. The cutoff established by the NOPD is 2,000 nanograms per milliliter. This is the same cutoff established by the Substance Abuse and Mental Health Administration ("SAMHSA”).

. Mr, Cole’s screening showed that morphine was detected in his system at a level of 3,108 nanograms per milliliter, which is 55.4% above the 2,000 cutoff.

. See Montegue v. City of New Orleans Fire Dep't, 95-2166, p. 5 (La.App. 4 Cir. 5/29/96), 675 So.2d 810, 813, writ denied, 96-1707 (La. 10/4/96), 679 So.2d 1389).