ROSEMARY LEDET, Judge.
|, This is a civil service, commission case. Jamal Kendrick seeks review of the decision of the Civil Service Commission of the City of New Orleans (the “CSC”) denying his appeal of the discipline imposed upon him by the New Orleans Police Department (the “NOPD,”,the “Department,” or the “Appointing Authority”).[1] The principal question Mr. Kendrick raises, on appeal is whether the Appointing Authority violated the Police Officer Bill of Rights, La. R.S. 40:2531(B)(7),[2] by | ¿failing to complete the administrative investigation within the *1279 sixty-day limitation. Answering that question in the affirmative, we find the CSC erred in denying Mr. Kendrick’s appeal and upholding the discipline imposed. We reverse the CSC’s decision and dismiss the discipline imposed.
FACTUAL AND PROCEDURAL BACKGROUND
Mr. Kendrick, then a NOPD officer with permanent status, was disciplined for an incident that occurred on August 6, 2012. On that date, Mr. Kendrick, who was driving a one-man police vehicle; stopped a suspect, Tony Gaines, for a traffic violation. Mr. Kendrick discovered that Mr. Gaines had an outstanding arrest warrant for domestic abuse battery, a violation of La. R.S. 14:35.3. Mr. Kendrick arréSted Mr. Gaines for the outstanding warrant. During the arrest, Mr. Kendrick discovered that Mr. Gaines was in possession of marijuana; the marijuana was found in Mr. Gaines’ pocket. Mr. Kendrick discarded the marijuana, declined to charge Mr. Gaines with an additional charge of possession of marijuana, failed to consult any of his supervisors regarding the marijuana, and failed to document the discovery of the marijuana in his police report.
While in jail, Mr. Gaines made multiple phone calls to family and friends, which were recorded. In preparation for trial in the domestic violence case against Mr. Gaines, Assistant District Attorney Naomi Jones reviewed the recordings of |aMr. Gaines’ jailhouse calls; In so doing, Ms. Jones heard Mr. Gaines state that the arresting officer found him to be in possession of marijuana, but took no action.
In a letter dated August 14, 2012, Howard Robertson, Chief of the Orleans Parish District Attorney’s Office’s Investigations Division, reported what Ms. Jones had related to him regarding the jailhouse calls to. Deputy Chief Arlindo Westbrook of the NOPD Public, Integrity Bureau (“PIB”). This letter stated as follows:
Assistant District Attorney Naomi Jones.was handling a domestic violence case against defendant Tony Gaines. While listening to recordings of telephone calls he made while incarcerated in Parish Prison, she noticed that Gaines told his friends that the arresting pfficer found him in possession of marijuana, and took no action.
Please be advised .that I am forwarding the information to you, for your review.
Thereafter, Mr. Robertson delivered to the PIB a compact disc containing the recordings of the jailhouse calls and the incident report naming Mr. Kendrick as the arresting-officer. ’ . .
After' receiving the compact disc' and the' related information,' Deputy Chief Westbrook assigned the investigation to Lieutenant Errol Foy. As part of his investigation, Lieutenant Foy reviewed the recordings of the jailhouse calls and interviewed witnesses, including Mr. Gaines’ father, Tony Lumpkin.
On' August 22, 2012, Lieutenant Foy prepared a Form DI-1 — labeled “Initiation of a Formal Disciplinary Investigation.” The Form DI-1 listed 'the following two NOPD Rule violations: (i) Rule 2, Moral Conduct, Paragraph ' 1, | ¿Adherence to Law[3] — La, R.S. 14:134, Malfeasance in Off *1280 ice;[4] and (ii) Rule 4, Neglect of Duty, Paragraph 4 C ll.[5]
On November 2, 2012, Lieutenant Foy took Mr. Kendrick’s administrative statement. In his statement, Mr. Kendrick testified that on August 6, 2012, he was riding in a one-man police vehicle when he stopped Mr. Gaines at the intersection of Read Boulevard and Lake Forest Boulevard in New Orleans.' At that time, Mr. Gaines had outstanding “a couple of warrants, an open item and a municipal | .^attachment.” According to Mr. Kendrick, after he handcuffed Mr. Gaines and placed him in the rear of the police vehicle, Mr. Gaines told Mr. Kendrick that he was in possession of tobacco, which was in his pocket. Mr. Kendrick then emptied the contents of Mr. Gaines’ pocket and found the tobacco to be marijuana. Mr. Kendrick acknowledged that he did not charge Mr. Gaines with an additional offense related to the marijuana and that he discarded the marijuana. Mr. Kendrick explained the reason he discarded the marijuana and declined to charge Mr. Gains for possessing it was because “[i]t was a nickel bag, uh, dirt weed[6] and it really didn’t look like it was enough to really test and I was gonna give him a break on it.” He acknowledged that was the only reason for his actions and inactions.
On November 26, 2012, Mr. Robertson sent a letter to Lieutenant Foy stating that the District Attorney’s office was “not currently investigating” Mr. Kendrick for the improper handling of possible evidence; the letter stated as follows:
Several months ago an Assistant District Attorney was listening to recordings of inmate telephone conversations,, while preparing her case for trial. She heard a defendant make a statement that a police officer had found him to be in possession of marijuana, and the officer discarded.the evidence. The attorney brought me a. copy of the jail tape and requested that I forward same to the NOPD, for informational purposes only. She stated that the defendant did not use the word “marijuana,” but spoke in a manner that she believed the officer had destroyed contraband.
I did not open a criminal investigation, because I felt there was no evidence to support such an action. I did forward a copy of the inmate jail conversation to *1281 the NOPD-PIB, to make them aware of the | ^incident. At that moment, our involvement with this incident had concluded.
On November 29, 2012, Lieutenant Foy issued to Mr. Kendrick a “Notice to Accused Law Enforcement Officer Under Investigation of a Pre-Disciplinary Hearing or a Determination of an Unfounded or Unsustained Complaint,” as per La. R.S. 40:2531, Rights of Law Enforcement Officers Under Investigation (the “Notice to Accused”). The Notice to Accused was signed by Mr. Kendrick on the same date. The Notice to Accused indicated that the PIB investigation initiated on August 14, 2012, was completed on that date. The Notice to Accused stated that the rule violations were sustained and that the disciplinary hearing date was tentatively set for January 16, 2013. No hearing, however, was held on that date.[7] According to Lieutenant Foy, he issued his official report, summarizing his investigation, to Superintendent Darryl Albert, of the Field Operations Bureau, on February 8, 2013.
On July 9, 2013, Superintendent Albert issued a “Disciplinary Hearing Notification” to Mr. Kendrick, which stated that the misconduct was that Mr.' Kendrick found marijuana oh an arrested subject, discarded the marijuana (the evidence) without the arrested subject being additionally charged for the violation, and made no report documenting the incident. It also stated that Mr. Kendrick acknowledged in his administrative statement that he found the marijuana and failed to charge the subject. This conduct was found to be a violation of Rules 2 and 4. In addition, the conduct was found to be in violation of Rule IX, Section 1, Paragraph 1.1 of the Civil Service CSC Rules relative to Maintaining Standards of |7Service (“Rule IX”).[8] The Rule IX violation was added at'this juncture. Lastly, the Notification stated that a Disciplinary Hearing was set for July 23, 2013, before Deputy Superintendent Albert of the Field Operations Bureau.
On July 23, 2013, the Disciplinary Hearing was held. Following the hearing, Deputy Superintendent Albert issued a Hearing Disposition, sustaining all three rule violations. As to Rule 2, his recommended discipline was dismissal; as to Rule 4, his recommended discipline was a three-day suspension; and as to Rule IX, no discipline was recommended. Superinteridént Roñal Serpas accepted Deputy Superintendent Albert’s recommended discipline. On the same date, Superintendent Serpas issued a Disciplinary Letter to Mr. Kendrick imposing the recommended discipline.[9] *1282 Mr. Kendrick timely appealed to the CSC.
On June 4, 2014, a Civil Service hearing was held before the Hearing Examiner. At the hearing, the Appointing Authority called the following three witnesses: Lieutenant Foy, Deputy Superintendent Albert, and Mr. Kendrick.- Mr. (sKendrick also called Deputy Superintendent Albert as a witness; he called no other witnesses. The testimony of the witnesses was as follows.
Lieutenant Foy, the PIB’s investigator in this matter, testified that his investigation included reviewing the tapes of Mr. Gaines,’ jailhouse phone calls. Some of the jailhouse calls were to Mr. Gaines’ father, Mr. Lumpkin. In those calls, Mr. Gaines mentioned that he had tobacco in his pocket when the officer arrested him and that his father had given the tobáceo to him. Mr. Gaines further indicated that he told the officer about, the tobacco and that the officer, discarded it for him. Lieutenant Foy interviewed Mr. Lumpkin, who confirmed the incident. According to Lieutenant Foy, Mr. Lumpkin told him that he came out to the scene of the arrest, that the tobacco the arresting officer found in Mr. Gaines’ pocket was marijuana, and that he observed the arresting officer discard the marijuana.
Lieutenant Foy further testified that Mr. Kendrick’s criminal misconduct — malfeasance in office — was discarding the marijuana and failing to take appropriate action in arresting the subject for possession of the marijuana. Lieutenant Foy explained that the Department’s standard operating procedure for an officer who finds a .controlled substance on an arrested subject was to identify the substance, to take possession of the substance, and to do field testing on the substance. Mr. Kendrick failed to follow this procedure — he failed to test the substance; he failed to include anything about the substance in his police report; and he failed to arrest Mr. Gaines for possessing the substance.
Deputy Superintendent Albert testified that in July 2013 he conducted the Commander’s Hearing. • He confirmed that he found Mr. Kendrick had violated Rules 2 and 4. When questioned by Mr.' Kendrick’s counsel, Deputy Superintendent Albert acknowledged that the two violations at issue were of ^Department policies. He explained that Mr. Kendrick “did not follow the guidelines of the police department to process and make an arrest” for marijuana that was located in a subject’s possession. According to Deputy Superintendent Albert, it is unlawful for an officer to discard marijuana found on an arrested subject. He emphasized that Mr. Kendrick was aware the substance was marijuana “[f]rom his experience and the packaging” of the substance, yet Mr. Kendrick “failed to secure it, test it, process it, and document it.” He stated that Mr. Kendrick told him the reason he discarded it was because “[i]t was a small amount and he wasn’t sure if it was enough to test.”
Deputy Superintendent Albert found that Mr. Kendrick’s actions and inactions violated the Department rules and constituted malfeasance. He testified that the duty lawfully imposed upon Mr. Kendrick as a NOPD officer was “to process the suspected narcotics in the way that we have trained him to do so and to make the proper arrest as a result of narcotics being removed and recovered from the arrested subject.” He explained that the reason he sustained a finding of malfeasance ½ office wás because he believed that the PIB’s investigator did a thorough investigation and that Mr. Kendrick testified that he did, in fact, violate thé Department’s policy and the law when he did not take enforcement action for the marijuana.
Deputy Superintendent Albert, when asked how Mr. Kendrick’s violation of a *1283 criminal state law felony statute would impair the efficient operation of the NOPD, replied that “incidents like this erode the trust ... between the NOPD and the public.” Incident like this, he added, effectively send the wrong message that the Department is inefficient or failing to follow its own rules and regulations. He stated •that “[w]e have an obligation as sworn officers to uphold the law and treat |ineveryone fairly.” As to the discipline, he explained that he used the Department’s penalty matrix in' making his recommendation to the Superintendent.- He further explained that the penalty range for a violation of Rule 2, paragraph 1, Adherence to Law, State Felony, is dismissal only and that even for a first offense there is no other penalty.
Mr. Kendrick testified that he found only a small amount of material in Mr. Gaines’ pocket and that the material could have been marijuana but was never tested. When confronted with his administrative statement, Mr. Kendrick acknowledged that he believed the material was marijuana. He described the material as “dirt weed.” He testified that the material was packaged in a small round bag consistent with the packaging of drugs. He characterized the amount of material as' so minute that if he had tested it, there would have been none left to submit as evidence. Lastly, he acknowledged the following: that he previously worked in' narcotics, that he discarded the material without testing it, that he failed to document the material in his police report, that he failed to consult any of his superiors regarding the material, that he was aware that it was improper to discard evidence, and that he was aware that discarding marijuana was a violation of NOPD’s internal policies.
After the NOPD rested, Mr. Kendrick filed a motion for involuntary dismissal on the following two grounds: © malfeasance in office requires a lawful duty, not a departmental duty; and (ii) the sixty-day rule, pursuant .to -La. R.S. 40:2531(B)(7), was violated because none.of the exceptions to the rule applied. The Hearing Examiner denied the motion,[10] Folio-wing its review of the l^hearing transcript and the documentary evidence, the CSC denied Mr. .Kendrick’s ¡appeal. From this decision, .Mr. Kendrick appeals to this court.
STANDARD OF REVIEW
As this court noted in Meisch v. Dep’t of Police, 12-0702, p. 5 (La.App. 4 Cir. 2/20/13), 110 So.3d 207, 210-11, the Mowing principles apply in CSC cases:
The CSC has the “exclusive power and authority to 'hear and decide' all removal and disciplinary cases.” La. Const. Art. X, § 12(B). In. order to take disciplinary action against á permanent classified employee, cause must be expressed in writing. Lá. Const. Art. X, § 8(A). This court has previously established that the “appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.” Pope v. New Orleans Police Dep’t, 04-1888, p. 6 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. “Legal cause exists1 whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.” Id., 04-1888 at p. 6, 903 So.2d at 5. The burden of proving the impairment rests with the NOPD as the appointing authority. Cittadino v. Dep’t *1284 of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990),
The following multifaceted standard of review applies to the CSC’s findings:
First, the review by appellate courts of the factual findings in a civil service case is governed by the manifest error or clearly erroneous standard. Second, when the CSC’s decision involves jurisdiction, procedure, and interpretation of laws or regulations, judicial review is not limited to the arbitrary, capricious, or abuse of discretion standard. Instead, on legal issues, appellate courts give no special weight to the findings of the trial court, but exercise their constitutional duty to review questions of law and render judgment on the record. A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial. Finally, a mixed question of fact and law should be accorded great deference by appellate courts under the manifest error standard of review.
Russell v. Mosquito Control Bd., 06-0346, pp. 7-8 (La.App. 4 Cir. 9/27/06), 941 So.2d 634, 639-40 (internal citations omitted).
112The issue of whether the CSC erred in its construction and application of the sixty-day rule presents an interpretation of law and is thus subject to a de novo standard of review. Liang v. Dep’t of Police, 13-1364, pp. 8-9 (La.App. 4 Cir. 8/20/14), 147 So.3d 1221, 1225 (citing Bell v. Dep’t of Police, 13-1529, p, 6 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 875).
DISCUSSION
Although Mr. Kendrick has assigned two errors, we find his first assignment of error dispositive — his contention that the administrative investigation conducted in this case violated the Police Officers Bill of Rights (La. R.S. 40:2531(B)(7)),[11] making the imposed discipline an absolute nullity under La. R.S. 40:2531(C).[12] The Police Officer’s Bill of Rights specifies that certain “minimum standards shall apply” to an internal, departmental investigation of an officer, such as Mr. Kendrick, that is the subject of such an investigation. Young v. Dep’t of Police, 13-1596 (La.App. 4 Cir. 6/25/14), 152 So.3d 193, 194-95, writ denied, 15-0201 (La.4/17/15), 168 So.3d 400 (citing La. R.S. 40:2531(B)). The minimum standard that Mr. Kendrick contends was violated here is the sixty-day limitation for administrative investigations set forth in La. R.S. 40:2531(B)(7).
11s“This court consistently has held that the NOPD initiates its investigation under La. R.S. 40:2531(B)(7) on the date it initiates the DI-1 form.” Abbott v. New Orleans Police Dep’t, 14-0993, p. 17 (La.App. 4 Cir. 2/11/15), 165 So.3d 191, 203-04. The statute expressly mandates that “[t]he investigation shall be considered complete upon notice to [the police officer] ... under investigation of a pre-disciplinary hearing or a determination of an unfound *1285 ed or unsustained complaint.” La. R.S. 40:2531(B)(7). At the Civil Service hearing, it was stipulated that the investigation started on August 22, 2012 — the date the Form DI-1- was issued; that there was a notification dated November 29, 2012 — the Notice to Accused — which was beyond the, sixty day limitation; that there was an investigation submission on February 8, 2013; and that there was a final Commander’s Hearing on July 23, 2013.
To summarize, the following time line was established:
• August 14, 2012 — The District Attorney’s office forwarded this matter to the PIB;
• August 22, 2012 — The PIB issued the Form DI-1;
• November 2, 2012 — Lieutenant Foy took' Mr. Kendrick’s administrative statement;
• November 29, 2012 — The PIB issued the Notice to Accused;
• February 8, 2013 — Lieutenant Foy submitted his official report, summarizing his investigation, to the Superintendent; and
• July 23, 2013 — The Commander’s (Disciplinary) Hearing was held.
Regardless whether the November 29, 2012, or the February 8, 2013 date is used as the date the investigation terminated, the investigation exceeded the sixty-day limitation under La. R.S. 40:2531(B)(7). Hence, it is undisputed, as the CSC stated |14in its decision, that the underlying administrative investigation exceeded the applicable sixty-day limitation..
Nonetheless, the sixty-day limitation is subject to the following three exceptions:
i. Requesting an extension from the CSC to complete the investigation;[13]
ii. Reaching an agreement between the parties to extend the investigation period;[14] and
iii. Investigating alleged “criminal activity.” [15]
The record is devoid of any evidence to support the application of either the first or second exception.[16] Thus, the issue of whether the sixty-day rule was violated in this case turns on whether, as the CSC concluded and the Appointing Authority contends, the third exception applies.
In finding the' third exception applied here, the CSC framed the issue as whether the investigation was criminál or administrative in nature.' Characterizing the investigation as criminal, the CSC reasoned as follows:
From the onset of the investigation, an allegation of malfeasance was at the core of the alleged action or lack of action by the Appellant [Mr. Kendrick]. The Appellant was notified of the underlying rule violations that were being investigated, and was also | ^notified of the investigator’s findings and of the fact *1286 that a Commander’s Hearing would be held. All of these notifications included the allegation that 'the Appellant had committed malfeasance. We find that the underlying investigation was criminal in nature, and that the sixty day time period did not apply.
In support of its decision, the CSC cited the phrase in the last sentence in La. R.S. 40:2531(B)(7), which specifically provides that “nothing in this Paragraph shall limit any investigation of criminal activity.”
In O’Hem v. Dep’t of Police, 13-1416 (La.11/8/13), 131 So.3d 29, the Louisiana Supreme Court construed the phrase in the last sentence of La. R.S. 40:2531(B)(7) to mean that “nothing must interfere with a criminal investigation.” O’Hem, 13-1416 at p. 4, 131 So.3d at 31 (emphasis in original). The Supreme Court emphasized that *‘[t]he plain language of the statute suggests a criminal investigation is distinct from a civil administrative investigation.” Id. Based on the facts of the case,[17] the Supreme Court held there was a criminal investigation that preceded an administrative investigation. .In so holding, the Supreme Court noted that “Sgt. Jones [the PIB’s investigator] initially requested a criminal statement and the defendant was ultimately charged with a criminal violation.” O’Hem, 13-1416 at p. 7, 131 So.3d at 33. The Supreme Court held that the CSC’s characterization of the preliminary investigation as a criminal | ^investigation was not manifestly erroneous or clearly wrong. Id. The Supreme Court thus held that “[b]ecause the statute specifically provides that nothing shall limit ah investigation involving alleged criminal activity, the sixty-day period within Which to complete an investigation did not begin until the start of the administrative investigation, and was completed within sixty days.” Id.
Applying the O’Hem analysis to the facts of this case, Mr. Kendrick contends that any tolling of the sixty-day limitation for a criminal investigation ended on August 14, 2012, when the District Attorney’s office indicated in its letters' to the PIB that it ended its investigation into this matter. He further contends that the administrative nature of the PIB’s subsequent investigation is evidenced by Officer Poy’s issuance of a Form DI-1 on August 22, 2012, coupled with Officer Fey’s taking his administrative statement on November 2, 2012. Mr, Kendrick thus contends that the CSC-erred in finding that the sixty-day rule was not violated. In further support of his position that the sixty-day rule was violated, Mr. Kendrick cites the following language by this court in Liang, 13-1364 at pp. 11-12,147 So.3d at 1227:
Upon our de novo review, we do not find support for the NOPD’s broad, far-reaching interpretation of La. R.S. 40:2531 B(7) and the Louisiana Supreme Court’s decision in O’Hem [v. New Orleans Police Dep’t, 13-14Í6 (La.11/8/13), 131 So.3d 29]. The O’Hem decision concerns the statutory language at issue in this case but only in the context of an officer who was the subject of both a *1287 criminal investigation and an administrative investigation. ■ Neither the Louisiana Supreme Court nor this Court has addressed whether the-sixty day time limitation within La. R.S. 40:2531 B(7) may be tolled for an unlimited time pending any investigation of criminal activity that does not involve or implicate the officer- subject to' administrative investigation for rule violations.
The Department counters that the CSC correctly found it conducted a timely investigation pursuant' to La. R.S. 40:2531(B)(7) because Mr.' Kendrick’s | ^violations included allegations of criminal activity. The Department thus contends that “the normal ‘sixty day rule’ for completing the misconduct investigation does not apply in this case.” In' essence, the Department’s argument is that because it alleged criminal misconduct in its investigation, the sixty-day limit is totally inappo-site.
The Department made the same argument in O’Hem that “the sixty-day time limit does not apply to the facts of this case because' the investigátion at issue involved allegations of criminal activity” and that the “time delays only apply to investigations that' do hot involve criminal activity.” O’Hem, 13-1416 at p. 3, 131 So.3d at 30-31. Although the Supreme Court in O’Hem ruled in the Department’s favor, it did not adopt the Department’s argument. As discussed earlier, the Supreme Court in O’Hem found the facts supported a finding that thére was a criminal investigation that preceded the administrative investigation. The Supreme Court' reasoned that the time limitation for completing the administrative investigation • was -tolled until the criminal investigation was completed. Indeed, the Supreme Court expressly cited the jurisprudence establishing that “a criminal investigation tolls the time limit for the administrative investigation,” O’Hern, 13-1416 at p. 5, 131 So.3d at 31 (citing Franklin v. Dep’t of Police, 10-1581 (La.App. 4 Cir. 4/6/11), 66 So.3d 87 (un-pub,), and Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 06-81 (La.App. 5 Cir. 7/25/06), 935 So.2d 849).
Implicit in the O’Hem decision is a requirement that there be a criminal investigation involving the officer in question to invoke the third exception. Indeed, this court relied on the lack of a criminal investigation involving the officer in question in Liang to reject the Department’s argument that the third exception applied. In Liang, there was'a criminal investigation involving two other officers, |lsbut none involving the officer in question, Liang. In that case, the Department argued that O’Hem stood for the • all-encompassing proposition that “an administrative investigation-can never under" any circumstances take preference over a criminal investigation, regardless of whether or not the officer facing administrative investigation is the subject-of the criminal investigation tolling the time limitation.” Liang, 13-1-364, p’ 11, 147 So.3d at 1227; Rejecting that argument, we reasoned that “[t]he O’Hem’ decision concerns the statutory language at issue in this case but only in the context of an officer who was the subject of both a criminal investigation and an administrative investigation.” Liang, 13-1364 at p. 12, 147 So.3d at 1227. We also distinguished the .facts in Liang from the facts in O’Hem.
One distinction we noted was that in O’Hem the - officer was under, (both a criminal and-an administrative investigation; thus,-- the officer’s administrative statement could not be coihpelled because it could potentially interfere with the ongoing criminal investigation into his actions. See La. R.S. 40:2531(B)(5).[18] In *1288 contrast, we noted that under the facts in Liang, in which the officer was not under a criminal investigation, “there was nothing precluding the NOPD from compelling . an administrative statement from Liang or proceeding immediately with an administrative investigation of Liang’s alleged rule violations.” Liang, 13-1364 at pp. 13-14, 147 So.3d at 1228.
Another distinction we noted in Liang was the lack of any objective reason for the delay. The record reflected only that a criminal investigation regarding the hfltwo other officers was presented to the District Attorney’s 'Office ■ on August 28, 2009; however, “[t]he NOPD failed to offer any factual basis to support the delay of Liang’s administrative investigation until March, 2011.” Liang, 13-1364 at pp. 13-14, 147 So.3d at 1228. Indeed, we noted that there was evidence that the administrative investigation of Liang “would not interfere with the criminal investigation of the. other two officers.” Liang, 13-1364 at p. 14, 147 So.3d at 1228; In contrast, we noted that in O’Hem “the NOPD presented facts to support the deferral of the administrative investigation until, the completion of the criminal investigation.” Liang, 13-1364 at pp. 15, 147 So.3d at 1229.
Comparing the facts in this case with those in O’Hem and in Liang, we find the facts in this case are much closer to the facts in Liang than in O’Hem. Here, no evidence was presented to establish that a criminal investigation was ever commenced by either the District Attorney’s office or the Department. To the contrary, in its letters to the PIB, the District Attorney’s office expressly indicated that it did not open a criminal investigation in this case because there was no evidence to support such an investigation. Although the Department was not precluded from pursuing its own criminal investigation against Mr. Kendrick,[19] no evidence was presented that it did so. . As Mr. Kendrick points out, the administrative nature of the Department’s investigation is evidenced by the administrative nature of the actions it took — Lieutenant Foy’s issuance of a Form DI-1 on August 22, 2012, commencing an administrative investigation, coupled with Lieutenant Foy’s taking of Mr. Kendrick’s administrative statement on|2nNovember 2, 2012. See La. R.S. 40:2531(B)(5). Mr. Kendrick acknowledges that had he been arrested for malfeasance or indicted or convicted for malfeasance, the factual scenario here would be different. None of those events occurred.
Moreover, as in Liang, the Department offered no objective excuse for its delay in completing its administrative investigation of Mr. Kendrick. Once Mr. Kendrick admitted the misconduct in his administrative statement, there was nothing further for the Department to investigate. Nonetheless, the Department failed to submit its investigation until February 8, 2013. At the Civil Service hearing, the Hearing Officer questioned Lieutenant Foy as to why Mr. Kendrick was given notification of a sustained complaint on November 29, 2012, when the official report was not provided to fhe Superintendent until February 8, 2013. Lieutenant Foy’s response was that, his report “just took longer to finish up.” No mention was made of a criminal investigation as the cause of any delay.
In this case, the CSC’s characterization of the nature of the investigation as crimi *1289 nal was based solely on the PIB’s inclusion in its notifications issued to Mr. Kendrick of an allegation of criminal misconduct— malfeasance in office. The CSC expressly adopted the Department’s position that not only was the underlying investigation criminal in nature, but also that, for that reason, “the sixty day time period did, not apply.” Stated otherwise, the CSC adopted-the Department’s position that the sixty-day limit did not apply at all because the investigation here involved allegations of criminal activity. The Supreme Court in O’Hem, however, did not hold that the sixty-day limitation in La. R.S. 40:2531(B)(7) does not apply to any part of an investigation alleging criminal activity. To the contrary, the Supreme Court in O’Hem held that the third exception provides for a tolling of the sixty day period, not an elimination of that period. In order for the third exception |g1to apply, there must be both a criminal and an administrative investigation of the officer in question. See Liang, 13-1364 at p. 12, 147 So.3d at 1227 (noting that O’Hem involved “an officer who was the subject of both a criminal investigation and an administrative investigation.”).
Absent some evidence that the alleged criminal misconduct was the subject of a criminal investigation or that a criminal investigation was the cause of a delay in pursuing an administrative investigation, the third exception does not apply. Here, there is no proof in the record of either. The CSC thus erred in finding — based on the third exception — that the sixty-day limitation did not apply. Accordingly, we find that none of the exceptions to the sixty-day rule apply, that the sixty-day rule was violated, and that the discipline imposed is thus null and void.

DECREE

For the forgoing reasons, we reverse the decision of the Civil Service Commission of the City of New Orleans and dismiss the discipline imposed against Mr. Kendrick.
REVERSED AND RENDERED

. Under the City Civil Service Rules, the "Appointing Authority” is defined as “any officer, board, agency, commission, or person having the power to make appointments to positions in the city service.'- City Civil Service Rules, ■ Rule I, §1,

.‘ La. R.S. 40:2531(B)(7) provides as follows:
When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or, law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguménts against the extension. If the board finds that the municipal police department has shown ‘good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained’in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days, The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disci-plinary hearing or a determination of an *1279 unfounded or unsustained complaint. Nothing in this ’Paragraph shall limit any investigation of alleged criminal activity.

. Rule 2, Moral Conduct, Paragraph 1, Adherence to Law provides as follows:
Employees shall act in accordance with the constitutions, statutes, ordinances, administrative regulations, and the official interpretations thereof, of the United States, the State of Louisiana, and the City of New Orleans, but when in another jurisdiction shall obey- the applicable laws. Neither ignorance of the law, its interpretations, nor failure to be physically arrested and *1280 charged, shall be regarded as a valid defense against the requirements of this rule.

.La. R.S. 14:134 provides as follows:
A. Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
B. Any duty lawfully required of a public officer or public employee when delegated by him to a public officer or public employee shall be deemed to be a lawful duty of such public officer or employee. The delegation of such lawful duty shall not relieve the public officer or employee of his lawful duty.

. Rule 4, Neglect of Duty, Paragraph 4 C 11 provides as follows:
C.The following acts or omissions to act, although not exhaustive, are considered 11. Failing to take appropriate action as to illegal activity, including vice and gambling violations, and/or to make a written report of the same to his/her commanding officer.

. At the Civil Service hearing, Mr. Gaines defined “dirt weed” as follows: "[d]irt weed is not a leaf, it’s not what we call a bud, which is a compound of everything balled up in a knot together, it don’t have seeds. Dirt weed literally looks like dirt, It’s a sandy, dirt substance.”

. At the Civil Service hearing, Deputy Superintendent Darryl Albert testified that the disciplinary hearings were routinely rescheduled for various reasons.

. City Civil Service Rules, Rule IX, § 1, Maintaining Standards of Service, provides:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, or has committed any act to the prejudice of the service .,. the appointing authority shall take action warranted by the circumstances to- maintain the standards of effective service.

. In the Disciplinary Letter, the factual basis for the determination was stated as follows:
The investigation has revealed that on August 14, 2012, information was received via written correspondence from the District Attorney's Office which alleged that on August 6, 2012, you arrested a subject for an outstanding warrant. During the arrest the subject Tony Gaines, was found to be in possession of marijuana by you. You discarded the marijuana without the arrested subject being additionally charged for the violation. You discarded the evidence and no report was made documenting the incident.
In an administrative statement Officer Jamal Kenderick admitted to finding the marijuana and not charging the arrested subject,

. At the conclusion of the Civil Service hearing, the Hearing Examiner ordered briefing on two issues — [i] whether or not the department violated the Police Officers’ Bill of Rights and the 60-day rule as it’s so called; and [ii] whether the violation of the departmental policy equates to a duty lawfully required of the individual,

. Mr. Kendrick’s other assignment of error is that the imposed discipline is overly harsh, arbitrary and capricious, and an abuse of discretion. He contends that "[i]t is a discipline and punishment not commensurate with the alleged violation.” Because our resolution of his first assignment of error is disposi-tive, we do not reach this second assignment of error.

. La, R.S. 40:2531 (C) provides as follows:
There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

. The first exception is that “the appointing authority may petition the CSC for an extension of up to an additional sixty days, and the CSC may grant such an extension if the appointing authority ‘has shown good cause’ for additional time to complete its investigation.” Young, 152 So.3d at 195 (citing La. R.S. 40:2531(B)(7)).

. The second' exception is that “the police officer under investigation and the appointing authority may enter 'into a written agreement extending the investigation for up to an additional sixty days.’ ” Young, supra.

. The third exception is that “the sixty-day limitation 'does not apply’ when the investigation is one of alleged criminal activity.” Young, supra (citing McMasters v. Dep’t of Police, 13-2634, p. 2 (La.2/28/14), 134 So.3d 1163, 1164, and La. R.S. 40:2531(B)(7)).

. At the Civil Service hearing, Detective Foy testified that he did not recall asking for an extension; and there is no evidence in the record that an extension was filed or requested. There is no evidence of any agreement between the parties to extend the time limitation.

. In O’Hem, the Supreme Court noted the following facts supporting the characterization of -, the preliminary investigation as a criminal investigation:
At the CSC hearing, Sgt. Jones testified that because of the incriminating circumstances of the incident, a criminal investigation was required prior to an administrative investigation to determine whether Officer O’Hern was to be prosecuted by the District Attorney. Based on the criminal investigation conducted by Sgt. Jones, Mr. O’Hern was arrested and, upon release, .was placed on desk duty by tire NOPD so that the administrative investigation could begin. Therefore, it is clear the administrative investigation did not begin until March 5, 2010, when the NOPD informed Mr. O’Hern that his statement was required to initiate the administrative investigation.
O'Hern, 13-1416 at p. 4, 131 So.3d at 31.

. La. R.S. 40:2531(B)(5) provides that "[n]o statement made by the police employee or law *1288 enforcement officer during the course of an administrative investigation shall be admissible in a criminal proceeding.”

. At the Civil Service hearing, Deputy Superintendent Albert acknowledged that even if the District Attorney’s office refuses to accept criminal charges, the Department can find the alleged misconduct actionable.