RYNE SCHULER

VERSUS

NEW ORLEANS POLICE
DEPARTMENT

\*

\*

\*

\*

\* \* \* \* \* \* \*

NO. 2020-CA-0563

COURT OF APPEAL

FOURTH CIRCUIT

STATE OF LOUISIANA

APPEAL FROM
CITY CIVIL SERVICE CSC ORLEANS
NO. 8877, "0"
Hearing Officer No Hearing Officer, Hearing Officer
\* \* \* \* \* \*
**Judge Roland L. Belsome**
\* \* \* \* \* \*
(Court composed of Judge Roland L. Belsome, Judge Regina Bartholomew-
Woods, Judge Paula A. Brown)

Donovan A. Livaccari
LIVACCARI LAW LLC
101 W. Robert E. Lee Blvd., Suite 402
New Orleans, LA 70124-2472

      COUNSEL FOR PLAINTIFF/APPELLANT

Sunni J. LeBeouf
CITY ATTORNEY
Elizabeth S. Robins
DEPUTY CITY ATTORNEY
Donesia D. Turner
SENIOR CHIEF DEUPTY CITY ATTORNEY
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

      COUNSEL FOR DEFENDANT/APPELLEE

           **AFFIRMED**

           **APRIL 7, 2021**

In this appeal, Officer Ryne Schuler of the New Orleans Police Department ("NOPD" or "appointing authority") is challenging the Civil Service Commission's ("CSC") decision to uphold the discipline imposed on him relating to an off-duty vehicular accident. For the reasons that follow, the CSC's decision is affirmed.

### *Facts and Procedural History*

On December 10, 2017, Jefferson Parish Police deputies discovered an abandoned vehicle that had struck a concrete divider on North Causeway Boulevard in Jefferson Parish. The vehicle's engine was running, the lights were on, and the air bags had deployed. Upon a search of the area, the driver of the vehicle and his passenger were located at a nearby IHOP restaurant. The deputies identified the driver as Ryne Schuler. When questioned about the accident, Officer Schuler claimed he did not recall what happened. His passenger informed the deputies that Officer Schuler was driving at a high rate of speed and lost control of the vehicle. The accident report notes that Officer Schuler appeared under the

1

influence of alcohol or drugs, which was likely a factor in the crash. However, because he had left the site of the crash, he was not investigated for driving while intoxicated. Instead, the deputies proceeded to cite Officer Schuler for: 1) hit and run; 2) reckless operation; and 3) improper lane use.

Later, on December 22, 2017, NOPD's Public Integrity Bureau ("PIB") received a web complaint from Michele Messina reporting Officer Schuler's December 10, 2017 vehicular accident. Ms. Messina, Officer Schuler's ex-wife, alleged that he had been drinking with her prior to the accident. She further claimed that she asked him not to drive due to his level of intoxication. To that request, Officer Schuler allegedly replied, "I'm a cop…I run this city, I get away with whatever I want!"

Following receipt of the complaint, PIB opened an investigation of the allegations against Officer Schuler on January 3, 2018. PIB determined that Officer Schuler received a citation for a one-vehicle accident in Jefferson Parish, but failed to report the incident to his supervisor. On May 24, 2018, Officer Schuler made an appearance in First Parish Court of Jefferson Parish and resolved the violations related to his vehicular accident. Once Officer Schuler had resolved the allegations of criminal activity against him, PIB continued its investigation on May 25, 2018. That investigation included criminal violations[1] as well as NOPD rule violations,[2] and concluded on June 27, 2018.

---

[1] The criminal violations investigated by PIB included: 1) driving while intoxicated (La. R.S. 14:98); 2) reckless operation of a vehicle (La. R.S. 14:99); and 3) hit and run (La. R.S. 14:100).

[2] NOPD Rules, including: 1) Rule 3-Professional conduct – paragraph 1, Professionalism ; 2) Rule 3-Professional conduct, paragraph 9, Use of Alcohol Off-Duty; and 3) Rule 5-Restricted

After a December 5, 2018 disciplinary hearing, the appointing authority penalized Officer Schuler for committing the following violations: 1) Hit and Run, La. R.S. 14:100 for causing an accident then fleeing the scene before deputies arrived (forty-five working days suspension without pay); 2) Rule 5, Restricted Activities, paragraph 9, criminal proceeding against a member, for failure to notify his supervisor, commander, or PIB that he received a citation for several traffic violations (thirty working days suspension without pay); and 3) Rule 3 Professional Conduct, paragraph 9, Use of Alcohol Off-duty for being impaired and under the influence of alcohol during an interaction with Jefferson Parish deputies following a vehicular accident (five working days suspension without pay).

Officer Schuler filed an appeal to the CSC. Following a hearing, the CSC affirmed two of the three suspensions, but reversed the forty-five days suspension for violating La. R.S. 14:100, hit and run. The CSC further found that the appointing authority did not violate La. R.S. 40:2531(B)(7), requiring the appointing authority to complete its investigation within sixty days. This appeal followed.

## *Assignments of Error*

On appeal, Officer Schuler contends that the CSC erred in rendering a decision that: 1) determined the investigation complied with the minimum standards established in La. R.S. 40:2531(B)(7); 2) determined the police report

_____

Activities, paragraph 9, criminal proceeding against an NOPD member, which requires NOPD Officers to immediately report criminal charges and traffic citations to their supervisor or commander.

that was the basis of the discipline was competent hearsay evidence, sufficient to justify the disciplinary action; and 3) determined that cause existed to discipline Officer Schuler.

## *Standard of Review*

Once the appointing authority imposes discipline on an employee, the employee has a right to seek an appeal from the CSC. The CSC has the authority to hear and decide all disciplinary cases. La. Const. art. X §12. On appeal, the CSC "has a duty to decide independently from the facts presented whether the appointing authority has a good or lawful cause for taking disciplinary action." *Whitaker v. New Orleans Police Dep't*, 2003-0512, p.2 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574.

This Court reviews the CSC's findings of fact under a clearly wrong or manifest error standard. *Liang v. Dep't of Police,* 2013-1364, p. 8 (La.App. 4 Cir. 8/20/14), 147 So.3d 1221, 1225. However, when reviewing a question of law, appellate review is *de novo. Id.*

## *Discussion*

Officer Schuler maintains that the appointing authority's investigation exceeded the sixty-day time limit set forth in La. R.S. 40:2531(B)(7)[3] and, for that

---

[3] La. R.S. 40:2531(B)(7) provides as follows:

> When a formal, written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who

4

reason, the imposed discipline is an absolute nullity under La. R.S. 40:2531(C).[4] The appointing authority contends that the sixty-day time period was tolled pending the conclusion of Officer Schuler's criminal charges in Jefferson Parish. "'[T]he question of whether the Commission erred in its construction and application of the sixty-day deadline set forth in La. R.S. 40:2531(B)(7) involves the interpretation of law and is therefore subject to *de novo* review.'" *Liang,* 2013-1364, p. 8, 147 So.3d at 1225 (quoting *Bell v. Dep't of Police*, 2013-1529, p. 6 (La.App. 4 Cir. 5/21/14), 141 So.3d 871, 875).

It is well established that the appointing authority begins its investigation under La. R.S. 40:2531(B)(7) on the date it initiates the DI-1 form. *Abbott v. New Orleans Police Dep't*, 14-0993, p. 17 (La.App. 4 Cir. 2/11/15), 165 So.3d 191, 202-03. Further, the statute expressly mandates that "[t]he investigation shall be considered complete upon notice to [the police officer] ... under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint." La. R.S. 40:2531(B)(7).

is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Nothing in this Paragraph shall limit any investigation of alleged criminal activity.

[4] La. R.S. 40:2531(C) provides as follows:

There shall be no discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.

At the CSC hearing, the evidence established that the investigation started on January 3, 2018, the date the DI-1 form was issued.  Then, Officer Schuler resolved his criminal violations in Jefferson Parish on May 24, 2018,[5] and the "Notice to Accused" was dated June 27, 2018.  The time that elapsed between the date the investigation began and the notice to Officer Schuler exceeded sixty days.

The statute provides for three exceptions to the sixty-day rule.  First, the NOPD can petition the CSC for an extension, and upon a showing of "good cause" the CSC may grant such a continuance of time to complete their investigation. La. R.S. 40:2531(B)(7). The second exception allows the police officer under investigation and the CSC to enter into a written agreement to extend the investigation up to sixty days.  *Id.*  Lastly, the sixty-day limitation does not apply when the investigation is one of alleged criminal activity. *Id.; see also McMasters v. Dept. of Police*, 2013-2634, p. 2 (La. 2/28/14), 131 So.3d 29, 31.

Here, there was no request for an extension of time for the completion of the investigation.  The appointing authority contends that the sixty-day time limitation for the administrative investigation did not begin until Officer Schuler resolved the various criminal traffic violations in Jefferson Parish.  The record indicates that those matters were concluded on May 24, 2018.  However, Officer Schuler argues that the exception to the sixty-day time limit relied on by the appointing authority does not apply in this case because there was no evidence that Jefferson Parish conducted an investigation into the events of December 10, 2017, and the alleged criminal activity took place outside of the appointing authority's jurisdiction.  We find that Officer Schuler's arguments misinterpret the statutory language and corresponding case law.

---

[5] Officer Schuler plead guilty to and paid a fine for Failure to Report an Accident.

The controlling case on this issue is *O'Hern v. Dept. of Police,* 2013-1416 (La. 11/8/13), 131 So.3d 29. Officer O'Hern was on duty, and found in his private vehicle incapacitated due to consuming alcohol and anti-anxiety medication. *Id.* 2013-1416, p.1, 131 So.3d at 30. It was also determined that while in the vehicle he had tasered himself and discharged his firearm numerous times. PIB opened an investigation into the incident on December 12, 2009. *Id.* In relation to the incident Officer O'Hern pled *nolo contendere* to illegal use of weapons or dangerous instrumentalities, a violation of La. R.S. 14:94. PIB completed its investigation on April 27, 2010, well outside of the sixty-day limitation. *Id.* In *O'Hern*, the Louisiana Supreme Court stated that where there is a criminal investigation that precedes the administrative investigation, the sixty-day investigation period does not begin until the criminal proceedings are concluded. *O'Hern*, 2013-1416, p. 5, 131 So.3d at 31. Accordingly, Officer O'Hern's investigation was deemed timely. *Id.* Later, the Louisiana Supreme Court reiterated that position in *McMasters,* stating, "the sixty-day time limitation within which to complete an investigation does not apply to investigations involving criminal activity." 2013-2634, p.2, 134 So.3d at 1163-64.

Following *O'Hern*, this Court has repeatedly found that when the appointing authority initiates an investigation into an officer due to alleged criminal activity, the sixty-day timeframe for the administrative investigation does not run until the charges against the officer, related to the alleged criminal activity, have reached a conclusion. *See Bell v. Dep't of Police,* 2016-0677 (La.App. 4 Cir. 3/22/17), 216 So.3d 819; *Michel v. Dep't of Police,* 2016-0623 (La.App. 4 Cir. 2/15/17), 212 So.3d 627. In each of those cases, the disciplined officer had pending criminal charges that prompted the disciplinary investigation. In those cases, the time in

7

which to conduct the disciplinary investigation did not run until the criminal charges were resolved.

In support of his argument, Officer Schuler cites to *Kendrick v. Dep't of Police,* 2016-0037 (La.App. 4 Cir. 6/1/16), 193 So.3d 1277. In *Kendrick,* during an arrest of a suspect for an outstanding warrant, Officer Kendrick discovered a small amount of marijuana on the subject. *Id.* 2016-0037, p. 2, 193 So.3d at 1279. Rather than charging the suspect with the additional charge of possession of marijuana, the officer discarded the marijuana and chose not to inform a supervisor or document the discovery. *Id.* While in jail, the suspect made numerous outgoing calls, which were recorded. In those recordings, the suspect informed friends and family that the arresting officer found the marijuana but did not charge him with possession. *Id.* Upon hearing those statements, an Assistant District Attorney reported it to the Chief of the Orleans Parish District Attorney's Office's Investigations Division, who in turn reported it to PIB. *Id.* PIB initiated an investigation on August 22, 2012, and the Notice to Accused was dated November 29, 2012. *Id.* at 1280-81. This Court found that since the only investigation into the incident was an administrative investigation, the appointing authority could not invoke the third exception to the sixty-day rule. *Id.* at 1289; *See also, Liang,* 2013-1364,147 So.3d 1221.

Officer Schuler attempts to liken the holding in *Kendrick* to his circumstance by arguing that there was no evidence of an actual investigation by Jefferson Parish deputies into his alleged criminal activity. However, the evidence proved the existence of pending criminal charges against Officer Schuler up until his guilty plea on May 24, 2018. In contrast, Officer Kendrick did not have any criminal

8

charges brought against him outside of the administrative investigation. Therefore, the cases are distinguishable.

Officer Schuler further argues that the Jefferson Parish Sheriff's Office had sole jurisdiction over his pending criminal charges, and therefore, the appointing authority had no reason to delay its administrative investigation. This Court addressed the sixty-day rule in conjunction with criminal charges brought by a neighboring jurisdiction in *Adams v. Dep't of Police,* 2013-0200 (La.App. 4 Cir. 12/18/13), 131 So.3d 378. On January 21, 2010, Adams, a resident of La Place, Louisiana, was arrested and charged by the St. John the Baptist Parish Sheriff's Office with one count of aggravated animal cruelty relating to the death of her dog. *Id.* at 38. On the same day as that arrest, PIB opened an investigation. *Id.* Later, on March 5, 2010, the St. John the Baptist Parish District Attorney's Office filed a bill of information charging Adams with two counts of simple cruelty to animals for failing to provide veterinary care. *Id.* Adams entered a *nolo contendere* plea to both counts on September 16, 2010. *Id.* On October 21, 2010, after completion of the administrative investigation, the NOPD notified Adams in writing of the sustained charges of misconduct. *Id.* Ultimately, Adams was terminated. *Id.* CSC denied her appeal. *Id.* On appeal to this Court Adams argued a violation of La. R.S. 40:2531(B)(7). *Id.* at 384. This Court found that the administrative investigation did not commence until Adams entered the *nolo contendere* plea, and was therefore completed timely. *Adams*, 2013-0200, p. 12, 131 So.3d at 386.

In this case, like in *Adams,* jurisdiction outside of Orleans Parish did not prevent the tolling of the sixty-days until the pending criminal charges were concluded on May 24, 2018. Accordingly, we find no error in the CSC's determination that the appointing authority did not violate La. R.S. 40:2531(B)(7).

Next, Officer Schuler maintains that the Jefferson Parish Sheriff's Office's accident report used to support his discipline was incompetent hearsay evidence. In administrative hearings, hearsay evidence may be admissible if it is competent evidence. *Taylor v. New Orleans Police Dep't*, 2000-1992, p. 5 (La.App. 4 Cir. 12/12/01), 804 So.2d 769, 773. Competent evidence is evidence with some degree of reliability and trustworthiness. *Id.* Officer Schuler argues that without other competent evidence the accident report is unreliable and insufficient evidence to prove the "use of alcohol while off duty" charge. Rule 3, Professional Conduct, Paragraph 9, Use of Alcohol Off Duty states that:

> An employee while off duty, shall refrain from consuming intoxicating beverages and Schedule I, II, III, IV, or V drugs to the extent it results in impairment, intoxication, obnoxious or offensive behavior that discredits him/her, the Department, or renders the employee(s) unfit to report for his/her next regular tour of duty. Commissioned employees of the Police Department shall refrain from carrying a firearm while in an alcoholic beverage outlet (R.S. 14:95.5 Possession of firearm on premises of alcoholic beverage outlet), consuming alcohol, or while under its influence.

Employees with permanent status in the classified service can only be disciplined for sufficient cause. La. Con. Art. X, § 8. In an appeal before the CSC, the appointing authority must prove by a preponderance of the evidence that the complained of activity occurred, and "the conduct bore a real and substantial relationship to the efficient operation of the appointing authority." *Cole v. Dep't of Police*, 2016-1075, p. 2 (La. App. 4 Cir. 5/17/17), 221 So. 3d 252, 254 (citing *Gast v. Dep't of Police*, 2013-0781, p. 3 (La.App. 4 Cir. 3/13/14), 137 So.3d 731, 733).

At the CSC hearing, Deputy Superintendent Paul Noel testified that he, along with Deputy Chiefs Arlinda Westbrook and Chris Goodly, conducted Officer Schuler's disciplinary hearing. He further identified all the documents relied upon in the determination of Officer Schuler's discipline. When addressing the accident

10

report from Jefferson Parish, Chief Noel stated that he did not interview the investigating deputy that authored the report, but he did give considerable weight to the narrative of the report. His reasoning for relying on the document was that the report was written by the law enforcement officer that investigated the incident and observed the scene of the accident, as well as, Officer Schuler's condition and demeanor at the IHOP restaurant. The "Officer's Narrative" in the accident report, which describes his observations stated that "[d]river of V1 was located at IHOP …appearing to be impaired and under the influence of alcohol beverage." The narrative further stated "his [Officer Schuler's] appearance showed that his alcohol/drug consumption had taken place well in advance and was likely a factor for the crash."[6] Notably, in Officer Schuler's administrative statement he did not dispute he was involved in the accident, but claimed he had no recollection of the incident including any interaction with the Jefferson Parish deputies. That statement would support the deputy's observations regarding the alcohol/drug consumption and the characterization of Officer Schuler's demeanor shortly after the accident.

Chief Noel testified that Officer Schuler's violation of Rule 3, Professional Conduct, Paragraph 9, Use of Alcohol Off Duty bore a substantial relationship to the efficient operation of the NOPD. He stated that Officer Schuler's behavior while off duty placed people in danger and damaged the trust of the NOPD while also being an embarrassment to the department. Accordingly, we do not find that the CSC erred in finding that the accident report, which was entered into evidence without objection, was reliable and trustworthy evidence, and that the appointing

---

[6] The narrative also stated that since Officer Schuler had left the accident scene prior to the deputies arriving, he was not investigated for driving while intoxicated.

11

authority provided sufficient proof to substantiate the discipline for Rule 3, Professional Conduct, Paragraph 9, Use of Alcohol Off Duty.

Lastly, Officer Schuler claims that the appointing authority failed to prove by a preponderance of the evidence that he violated Rule 5, Restrict Activities, Paragraph 9, Criminal Proceedings Against a Member, reads in pertinent part:

> A member shall immediately report to the Public Integrity Bureau via Form 349, information concerning any:
>
> - Arrest or summons as a defendant in a criminal matter;
>
> - Criminal Federal, State, Parish, Municipal or Traffic Court proceeding wherein a member is named a defendant...

The appointing authority found that Officer Schuler violated this rule by not reporting the citations he received as a result of his vehicular accident. Even though the rule clearly states that a member must report if named as a defendant in Parish or Traffic Court, Officer Schuler contends that he had no duty to report the traffic violation. After the appointing authority was made aware of the accident, Officer Schuler provided PIB with evidence that he had resolved the case in which he was a defendant in First Parish Court for Jefferson Parish.

Chief Noel also related the violation of this rule to a real and substantial relationship to the efficient operation of the NOPD by stating that an off duty police officer's criminal activity can certainly affect their performance on the job. Thus, by not informing the NOPD of such activity compromises the department's ability to deliver services to the community while also damaging the trust the department has in the community. Additionally, "[p]olice officers are charged with enforcing the motor vehicle and traffic laws; 'a police officer's failure to comply with the laws thus

gravely impairs the efficiency of the department.'" *Regis v. Dep't of Police*, 2013-1124, p. 2 (La. 6/28/13), 121 So.3d 665, 665-66 (quoting *Davis v. Dep't of Police,* 590 So.2d 850, 852 (La.App. 4 Cir.1991) (affirming discipline for an officer who caused a traffic accident)).  Accordingly, the CSC was not manifestly erroneous in finding that the appointing authority had cause to discipline Officer Schuler for a violation of Rule 5, Restricted Activities, Paragraph 9, Criminal Proceedings Against Member.

For the reasons discussed, the decision of the Civil Service Commission is affirmed.

**AFFIRMED**